92

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

PAID
FL00110912

Ca
Case: 4:16-cv-11061
Judge: Parker, Linda V.
MJ: Stafford, Elizabeth A.
Filed: 03-23-2016
CMP KARTER LANDON v CITY OF FLINT (dw)

**KARTER LANDON**

**Plaintiff**

**v.**

**CITY OF FLINT, MICHIGAN**

**Defendant**

**VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT, TEMPORARY RESTRAINING ORDER, AND PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF**

**EXHIBIT A: FLINT CITY COMPREHENSIVE RENTAL INSPECTION CODE**

**EXHIBIT B: FLINT CITY *ENFORCEMENT LETTERS***

**EXHIBIT C: *INSPECTION*** CHECKLIST

**EXHIBIT D: Baker v. Portsmouth**

Plaintiff KARTER LANDON, for his Verified Complaint against Defendant CITY OF FLINT, MICHIGAN, hereby alleges as follows:



1697

## INTRODUCTION

1. This is an action brought pursuant to 42 U.S.C. §1983 for declaratory judgment, temporary restraining order, preliminary and permanent injunction, actual and nominal damages, restitution, and other relief arising from the unconstitutional policies, practices, and threats of Defendant City of Flint's policies, practices, and conduct threaten Plaintiff with irreparable harm to his rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. The harm may only be remedied by a ruling from this Court.

2. Defendant has impeded and threatened to further unconstitutionally impede Plaintiff in his right to be free from unlimited warrantless searches without probable cause by maintaining, implementing and enforcing vague policies that (i) threaten Plaintiff with subjection to unduly broad warrantless searches of his houses and business property without probable cause; (ii) violates Plaintiff's reasonable expectation of privacy; and (iii) retaliate against Plaintiff for exercising his Fourth Amendment rights by either (a) pressing criminal charges against him (see 106.3 Prosecution of violation), (b) pressing civil charges against him, or (c) depriving him of his property rights, including but not limited to the right to use his rental property by renting it to others.

3. As a result of the policies, practices, and customs of the Defendant, as well as certain conduct by Defendant, Plaintiff will suffer irreparable harm unless the Defendant is immediately enjoined from restricting his Fourth Amendment rights in this manner.

4. For the reasons above, Plaintiff seeks, amongst other things, declaratory judgment and injunctive relief determining that the offending provisions of the City's Comprehensive Rental Inspection Code, codified in "Ordinance 3707" of The City of Flint "Comprehensive Rental Inspection Code" (hereinafter "The Code," or "The Program"), are unconstitutional on its face and as applied to him, and further, that the Code is insufficient to support the issuance of an "administrative" warrant.

**PARTIES**

5. The Plaintiff is a rental property owner in the City of Flint.

6. Plaintiff owns rental homes within the City of Flint, Michigan, each of which is subject to the Comprehensive Rental Inspection Code and its inspection requirements.

7. In 2015, Plaintiff has paid in excess of $ 2723 in rental inspection fees to Flint.

8. Each of the Plaintiff's properties have been inspected at least once by the City of Flint in the last three years.

9. Plaintiff has never voluntarily and knowingly consented to the Comprehensive Rental Inspection Code inspections.

10. Each inspection of each parcel of Plaintiff's rental property was coerced through the implied threat of loss of property or liberty; and Plaintiff continue to be coerced into providing involuntary consent to such inspections. Defendant denies tenants in Plaintiff's rental properties any water to coerce Plaintiff to consent to inspections even the tenants do not consent to.

11. Defendant City of Flint, Michigan is a municipal corporation located within Genesee County, Michigan; it is created and existing under and by virtue of the laws of the State of Michigan. In fulfilling its duties, the City acts by and through its council and administrative members, as well as having previously fallen under State control.

12. Defendant implements the Comprehensive Rental Inspection Code and/or enforces the unconstitutional restrictions accomplished through the City's policies and practices (as described herein).

13. Defendant undertook specific action so as to deprive and/or violate the constitutional rights of the Plaintiff.

14. Defendant further threatened Plaintiff with loss of property and criminal and civil charges as a consequence to any attempt to assert a constitutional right to be free from unreasonable searches of his houses.

15. All actions by the Defendant described herein were undertaken under color of state law which caused the deprivation of Plaintiff' rights protected by the United States Constitution.

16. All acts herein of the Defendant City of Flint, its officers, agents, servants, employees or persons acting at its behest or direction, were done and are continuing to be done under the color or pretense of state law.

## JURISDICTION AND VENUE

17. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, as this action arises under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution; under 28 U.S.C. § 1343(a)(3), in that it is brought to prevent imminent deprivations, under color of state law, of rights, privileges and immunities secured by the United States Constitution; under 28 U.S.C. § 1343(a)(4), in that it seeks to recover damages and secure equitable relief under an Act of Congress, specifically, 42 U.S.C. § 1983, which provides a cause of action for the protection of civil and constitutional rights; under 28 U.S.C. § 2201(a), to secure declaratory relief; under 28 U.S.C. § 2202, to secure preliminary and injunctive relief and damages; and under 42 U.S.C. § 1988 to grant Plaintiff prayer for relief regarding the recovery of costs, including damages and restitution. Venue is proper within this judicial district and division pursuant to 28 U.S.C. § 1391(b) and any Local Rule which Plaintiff preserves to argue, as (i) Defendant is situated within this judicial district and division, (ii) the Defendant transacts business within this District, and (iii) the conduct complained of occurred within this District.

## FACTUAL ALLEGATIONS

***The City of Flint Comprehensive Rental Inspection Code: Prohibition on Renting Homes Without Consenting to a Warrantless Search***

18. Plaintiff incorporates by reference all of the foregoing paragraphs as if fully restated herein.

19. The City of Flint, Michigan enacted its Comprehensive Rental Inspection Code in 2008. ***See Exhibit A: Comprehensive Rental Inspection Code.***

20. The Code took effect on May 12, 2008.

21. The Code mandates that, "The owner or registered agent of any unit shall be responsible for meeting the Health and Safety Standards of Property Maintenance Code of the City of Flint and its pertinent Administrative Amendments prior to allowing the unit to be occupied." Section 902.1.

Section 902.3(a) of the Code provides "No rental unit shall be occupied unless a certificate of inspection has been issued by the enforcing agency.".

22. "In no event will the period of time between inspections exceed three years for any rental property." Section 902.5(c).

23. Certificates of inspection may only be issued to property owners after the home at issue has undergone a government inspection ("The City shall issue a license and certificate of registration for a rental dwelling where the City finds that the rental dwelling and accessory buildings and yards does not have outstanding violations on file in the development division office that would prevent occupancy of the property." and "The owner or registered agent must have paid all fees and debts to the City resulting from the provisions of this Comprehensive Rental Inspection Code prior to the issuance of a license and certificate of registration." See Section 902.13 (a) and (b).

24. Further, the Code authorizes city officials to conduct a *full* inspection of a rental home, curtilage, and outbuildings in response to a specific and narrow complaint unrelated to the entire home, or when a city official discovers a violation "during the execution of his or her duties." Section 902.6(a-d).

25. During these inspections, city officials search for evidence that can result in criminal charges and/or condemnation of the property and / or civil infraction tickets / fines being issued and levied.

26. Evidence adduced through inspection can further result in "suspension" of the city permit to rent the property. Section 902.4 and 902.15.

27. The Code authorizing the inspections does not specify a city official's scope.

28. As to the scope of the rental inspections, the Code simply alludes to "periodic inspections," and suggests that agents may search for any violation of the provisions of the code, and further that "The City shall issue a license and certificate of registration for a rental dwelling where the City finds that the rental dwelling and accessory buildings and yards does not have outstanding violations on file in the development division office that would prevent occupancy of the property." Section 902.13(a). To the extent that the scope of the search is implied by the Code, a broad array of housing regulations applies.

29. City agents maintain and apply a "Pre-Inspection Checklist for Certificate of Compliance" ***See Exhibit C.***

30. The checklist enumerates 36 separate items, called "guidelines" as disparate as "fences," "extension cords," "illumination," "Floors/Wall/Ceilings," and "sprinkler system."

31. Through its labels, the Checklist makes clear that a thorough search is to be made of the Exterior Premises, Interior, Kitchen, Hallways, Laundry, Basement, Bedrooms, Bathrooms, and "other."

32. The Code further intrudes on the tenants' right of privacy.

33. The City charges fees for issuing and renewing rental dwelling permits.

34. Rental Dwelling Code fees are minimally $225 per unit every three years, not counting initial registration fees of $125, reinspection fees of $120, and non-compliance fees of $450.

35. Flint conducts reinspections without notice, without appointment, at random times without any indication that previously-claimed violations have been fixed, at a cost of $120 each, sometimes monthly, until Flint gains access to the property and finds, in its sole opinion, that no code violations exist, billing even if no access is granted, even if a tenant refuses access, even if Plaintiff has refused entry, even when the property is empty.

36. Flint refuses issuing certificates of inspection / completion unless all claimed outstanding fees are paid, regardless of the property owner's dispute of owing said fees. It even makes up fees, such as $25 for a "reinstatement fee" after a non-rental affidavit is filed by a landlord, (also made up) stating the property is not currently a rental. This fee is coerced without power of law by Defendant refusing to allow rental of the unit not previously rented but previously registered and inspected. (Flint requires this non-rental affidavit on non-rentals, although no such ordinance exists.)

37. Flint refuses the current tenant water service unless a certificate of inspection / completion has been issued. As well, lack of water service is construed as a violation preventing a certificate of inspection from issuing, which in circle prevents the tenant from obtaining water service.

38. Even though a house may pass inspection, if it has been three years since the initial inspection was paid for, Flint will then again require another inspection fee be paid, based on the time since the last fee was paid, not based on the most recent inspection.

39. Flint refuses often to cooperate with requests to reschedule inspection times and dates.

40. Flint has gone so far as to attempt to order Plaintiff to provide access to his occupied homes where the tenant has refused access.

41. Although Flint ordinance 902.5(b)(1) states that the property owner sets the inspection appointment, Flint sets every appointment at its will.

42. Flint has intentionally not alerted landlords that their property is due for an inspection to assess a $450 late fee, contrary to ordinance 902.5(d).

43. Contrary to 902.3(c) which states that "A violation of this Comprehensive Rental Inspection Code shall not prevent the issuance of a certificate, but the enforcing agency shall not issue a certificate when the existing conditions constitute a hazard to health or safety of those who may occupy the premises," Flint will refuse to issue a certificate of inspection / completion where ANY so-called "violation" exists. For example, Plaintiff was refused a certificate on a property at 2913 Montana where two downspouts lacked elbows.

44. Plaintiff could remove said downspouts at 2913 Montana and obtain a certificate, or add two elbows. This condition was enough for Flint to refuse the tenant water service.

45. Flint refused a certificate where a garage door was stuck in the open position.

46. Flint insists that the exterior of houses be painted where the need for minor touch-up painting may be present even when outside temperatures are below freezing.

47. Flint insists roofs be replaced, which cost of said replacement exceeds the value of the property (most of Plaintiff's rental properties being located in Flint have values less than the cost of a new roof), where some shingles are curled, although no roof leaks are present.

48. Flint demands $300 to hear any appeal of its findings regarding code violations.

49. The sole purpose of Flint's Comprehensive Rental Inspection Program is to generate revenue for the City.

50. Flint refuses to certify properties unless all utilities are on, including water.

51. Flint refuses to allow tenants to place water into their name unless a certificate has been issued.

52. Plaintiff is required to arrange for water to be turned on at his properties occupied by tenants for Flint's inspection.

53. Flint charges Plaintiff $50 to turn the water on, and $50 to turn the water off.

54. Flint told Plaintiff that these would be the only charges Plaintiff would pay to have water on; however, Flint has billed Plaintiff approximately $200 or more for almost every property he has had to have water turned on at for an inspection, claiming approximately a $100 fee for "delivery of water" although no water usage has occurred.

55. Although Plaintiff used to return water meters to Flint, Flint now refuses to accept the return of the water meters assigned to Plaintiff in each of these circumstances where water had to be turned on, leaving Plaintiff with a liability for a water meter for which Defendant has been known to charge anywhere from $225 to $450 for said water meter.

56. Flint currently utilizes a private company called Nan-McKay to perform inspections. This company inspected or attempted to inspect without notice several of Plaintiff's houses, each inspection resulting in a $120 bill to the Plaintiff, which has to be paid before a certificate of inspection will issue and the tenant will be allowed water.

57. Flint refuses to certify and therefore allow the tenants water if all fees are not paid, even if Nan-McKay has waived such a fee under an agreement with Plaintiff that no notice was given and therefore no fee is owed. (for example, this occurred at 2506 Ohio)

58. Although Flint knows tenants at Plaintiff's properties have to live without water while disputed issues are pending, Flint shows no concern for this and delays amount to weeks and even months; for example, at 2506 Ohio, where the house passed inspection and Nan-McKay agreed no fees were owed, but Flint ignored the issue, namely Jesse Buchanon (Flint's chief inspector) ignored the issue, for two months, and still no certificate has been issued.

59. Even one week after a house has passed inspection, a tenant is refused water service, to wit: 2510 Leith. This house passed inspection on January 12th...as of January 19th., Flint did not show it had been inspected or passed. The tenant was turned away for water. Upon contact with Nan-McKay, it was admitted an error occurred and it was stated that the house passed.

60. Defendant requires repairs even if the current tenant has caused the damage, and demands additional inspection fees and threatens criminal / civil prosecution even where the tenant will not allow repair.

61 Defendant causes delays:

a) Defendant consistently locks its inspection company, Nan McKay, out of their system so that issues cannot be resolved. Melody at Nan Mckay admitted on 2-8-16 that the software has been down for two weeks. On 3-1-16, the inspection company had a message on its answering system stating its systems were down. These "systems" are very often down, delaying Plaintiff the ability to rent his properties and tenants from having water service. On 3-9-16 the system was down. When the system is down, Defendant cannot see when houses are scheduled for inspections to confirm a date or reschedule a date.

b) Defendant fails to clarify vague violations and cites the most minor issues as violations.

c) Defendant also makes Plaintiff wait weeks for inspections.

d) Defendant states houses have passed inspection, but fails to give any documentation, even weeks afterwards.

e) Defendant does not respond to phone or emails questions for days.

f) Defendant does not provide results of inspections for weeks.

g) Defendant does not provide anything in writing after a houses passes code for weeks.

h) Defendant requires water on to pass inspection, but sometimes cannot turn water on for days (for example, requesting water at 3155 Maryland on Monday 2-29-16- cannot be turned on until Thursday 3-3-16).

All of this delays rental of Plaintiff's property or delays Plaintiff's tenants in getting water turned on.

***PLAINTIFF STATES***

62. Plaintiff maintains standing to bring this action because if he does not consent to a warrantless search of his property he is faced with (1) criminal charges and civil fines; and/or (2) loss of all rental income related to his Flint properties.

63. The City of Flint has inspected and searched all of Plaintiff's properties located in Flint.

64. After inspection, no exigent risks of public or private harm existed on any of the Plaintiff properties. In fact, most passed inspection, or minor violations posing no risk to the health and safety of the occupants were immediately corrected.

65. The City of Flint coerced each and every such inspection of Plaintiff: (1) Plaintiff consented to the searches only to avoid criminal and civil liability and preserve his right to continue renting out his properties; and (2) Plaintiff never voluntarily consented to any search of any of his properties.

66. Plaintiff now intends to refuse all further efforts by the City to (1) inspect his properties; and (2) collect fees from him to fund the inspection of his properties and others.

67. As a consequence of this abstention, Plaintiff is in imminent risk of facing criminal charges, civil penalties, and/or loss of his property rights in response to this assertion of his Fourth Amendment rights. Plaintiff's sole source of income is rental income from his properties. Plaintiff supports his 14 year-old son. Extinguishing Plaintiff's sole source of income is detrimental to him and his son and does irreparable harm to both.

68. No tenant or neighbor of any of the Plaintiff's properties has ever complained to the City of Flint regarding code violations or other nuisances at any of these properties.

69. Meanwhile, Plaintiff maintains no conditions at any of his properties that would (1) give rise to the need for an emergency entry into those properties; or (2) vest the City with probable cause to believe that Plaintiff maintains an interior code violation or other nuisance at this time

70. Plaintiff currently maintains no substantive interior code violations within his rental properties.

71. Plaintiff has never been prosecuted or fined by the City of Flint for maintaining interior code violations or other nuisances; however, Flint has attempted several times to fine Plaintiff for untimely payment of inspection fees or untimely compliance with claimed code violations, even where Plaintiff appealed such claimed

violations.

72 Plaintiff is contractually and statutorily obligated to provide his tenants with a fit and habitable property, free from any nuisances and/or other dangerous conditions, and understands and abides by these terms.

73. Plaintiff is not currently in violation or has ever been found to be in violation of his contractual or statutory obligations.

74. Plaintiff is, by all accounts, a model property owner and landlord. Plaintiff is also a licensed real estate broker within the State of Michigan.

75. Defendant has contacted Plaintiff and insisted on performing, within the next thirty to sixty days, further warrantless searches within some of Plaintiff properties. Defendant insists all utilities, including water provided solely by Defendant at extreme profit, and gas and electric utilities, all at Plaintiff's expense.

**DECLARATORY JUDGMENT AND INJUNCTION**
**(28 U.S.C. § 2201, *et seq.*)**

76. Plaintiff hereby incorporates by reference the allegations in the foregoing paragraphs as if set forth fully herein.

77. An actual controversy has arisen and now exists between Plaintiff and Defendant concerning Plaintiffs rights under the United States Constitution. A judicial declaration is necessary and appropriate at this time.

78.. A state actor is liable under 42 U.S.C. § 1983 if it took "action pursuant to official policy of some nature [that] caused a constitutional tort." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978).

79. "[Governmental] liability may be imposed for a single decision by [government] policy makers under appropriate circumstances." *Id.* at 480.

80. A state actor cannot constitutionally condition the receipt of a benefit, such as a rental permit, liquor license, or an entertainment permit, on an agreement to refrain from exercising one's constitutional rights, particularly one's right to be free from unlimited warrantless searches of private property without probable cause.

Id., citing *Perry v. Sindermann,* 408 U.S. 593, 597, 92 S.Ct. 2694, 2697–98, 33 L.Ed.2d 570 (1972) ("For at least a quarter- century, this Court has made clear that even though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech."); *Keyishian v. Board of Regents,* 385 U.S. 589, 606, 87 S.Ct. 675, 685, 17 L.Ed.2d 629 (1967) (quoting *Sherbert v. Verner,* 374 U.S. 398, 404, 83 S.Ct. 1790, 1794, 10 L.Ed.2d 965 (1963)) ("It is too late in the day to doubt that the liberties of religion and expression may be infringed by the denial of or placing of conditions upon a benefit or privilege.").

81. Plaintiff desires a judicial determination of his rights against Defendant as they pertain to Plaintiffs right to be free from unlawful searches, coerced surrender of property rights and/or privileges, and vague licensing requirements.

82. In order to prevent violation of Plaintiff' constitutional rights by Defendant, it is appropriate and proper that a declaratory judgment be issued, pursuant to 28 U.S.C. § 2201 and FED. R. CIV. P. 57, declaring unconstitutional, facially and as-applied here, all relevant portions of the City of Flint's Comprehensive Rental Inspection Code, as well as Defendant' enforcement policies, practices, and actions related to the Code.

83. Furthermore, pursuant to 28 U.S.C. § 2202 and FED. R. CIV. P. 65, it is appropriate and hereby requested that this Court issue preliminary and permanent injunctions prohibiting the Defendant from enforcing its search policies and all policies, practices, and conduct reliant on and related to the Code's search policies, including but not limited to the Code's search fees and permitting process, to the extent they are unconstitutional, in order to prevent the ongoing violation of Plaintiff' constitutional rights. It is also appropriate that this Court issue preliminary and permanent injunctions prohibiting Defendant from abusing its position as sole provider of water by refusing water service to tenants who reside in Plaintiff's properties if Plaintiff or tenant chooses to exercise his or her Constitutional Rights as argued above, in order to coerce allowance of warrantless searches.

## COUNT I

## VIOLATION OF RIGHT TO DUE PROCESS AND FREEDOM FROM UNCONSTITUTIOTIONAL SEARCHES PURSUANT TO THE FOURTH, FIFTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION (42 U.S.C. § 1983)

84. Plaintiff incorporates by reference all of the foregoing paragraphs as if fully restarted herein.

***Violation of the Unconstitutional Conditions Doctrine***

85. The Supreme Court's "Unconstitutional Conditions" Doctrine arises from the Due Process guarantees articulated in the Fifth and Fourteenth Amendments to the United States Constitution.

86. The Supreme Court of the United States has confirmed in a variety of contexts that "government may not deny a benefit to a person because he exercises a constitutional right."[1]

87. The Supreme Court has further explained that "[t]hose cases reflect an overarching principle,

doctrine, that vindicates the Constitution's enumerated rights by

ɔple into giving them up."[2]

stently applied the Unconstitutional Conditions Doctrine within the

ıe government ultimately succeeds in pressuring someone into

titutional conditions doctrine forbids burdening the Constitution's

benefits from those who exercise him."[4]

---

1 *Regan v. Taxation With Representation of Wash.*, 461 U.S. 540, 545 (1983). See also, *e.g.*, *Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*, 547 U.S. 47, 59–60 (2006); *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 78, 110 S.Ct. 2729 (1990). In *Perry v. Sindermann*, 408 U.S. 593 (1972), for example, a public college would violate a professor's freedom of speech if it declined to renew his contract because he was an outspoken critic of the college's administration. And in *Memorial Hospital v. Maricopa County*, 415 U.S. 250 (1974), a county impermissibly burdened the right to travel by extending healthcare benefits only to those indigent sick who had been residents of the county for at least one year.

2 *Koontz v St. Johns River Water Management Dist.*, 133 S.Ct. 2586, at 2594 (2013).

3 Id. (explaining that "land-use permit applicants are especially vulnerable to the type of coercion that the unconstitutional conditions doctrine prohibits because the government often has broad discretion to deny a permit that is worth far more than property it would like to take."), citing *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 547, 125 S.Ct. 2074, 161 L.Ed.2d 876 (2005); *Dolan*, 512 U.S., at 385, 114 S.Ct. 2309 (invoking "the well-settled doctrine of 'unconstitutional conditions'").

4 *Koontz,* supra.

90. Further, the right to rent property in Michigan, like the right to exclude others from private property, is not merely a "government benefit," but rather, is an extension of one's private property rights - - rights recognized by the Michigan Constitution and Michigan Supreme Court as "fundamental."

91. Defendant imminently threatens to pressure Plaintiff into forfeiting his Fourth Amendment rights by, in response to the exercise of those rights, (1) withholding rental certificates needed to rent homes in Flint and/or (2) prosecuting Plaintiff for criminal violations or civil penalties, should he rent his homes without a rental certificate and/or (3) denying Plaintiff's tenants water service.

92. Defendant burdens Plaintiff's Fourth Amendment rights by operation of law, through maintaining and enforcing the Comprehensive Rental Inspection Code.

***Violation of the Fourth Amendment's Search and Seizure Clause***

93. The Fourth Amendment provides in relevant part that the "right of the people to be secure in his persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."

94. The Fourth Amendment indicates with some precision the places and things encompassed by its protections: persons, **houses**, papers, and effects.

95. The Amendment establishes a simple baseline, one that for much of our history formed the exclusive basis for its protections: When "Government obtains information by physically intruding" on persons, hou … he original meaning of the Fourth Amendment" has "undoubtedly occ …

… red warrantless searches "*per se* unreasonable."[6]

… *of City and County of San Francisco* and *See v. City of Seattle*, … tatutes have been held unconstitutional unless they require a search … cause.[7]

5 *United States v. Jones,* 132 S.Ct. 945, 950–951, n. 3 (2012).

6 *Mincey v. Arizona,* 437 U.S. 385, 390 (1978) (internal quotation marks omitted); see *Groh v. Ramirez,* 540 U.S. 551, 559 (2004).

7 387 U.S. 523 (1967).

98. *Camara* held that administrative inspections are significant intrusions on Fourth Amendment rights for which warrants generally are required.

99. *Camara* further held that warrantless searches of residential rental property by municipal inspectors violated the Fourth Amendment protection against unreasonable searches and seizures.[8]

100. In *See v. City of Seattle*,[9] the Supreme Court held that, like the search of a private home, the search of a business is presumptively unreasonable if conducted without a warrant, as a businessman's Fourth Amendment guarantees are "placed in jeopardy if the decision to enter and inspect for violation of regulatory laws can be made and enforced by the inspector in the field without official authority evidenced by a warrant,"[10]as, "[i]t is untenable that the ban on warrantless searches was not intended to shield places of business as well as of residence."[11]

101. In *Hodgins v. U.S. Department of Agriculture,* the Sixth Circuit Court of Appeals held "for warrantless searches to be justifiable under a regulatory scheme, the object of the search must be something that can be quickly hidden, moved, disguised, or altered beyond recognition, so that only a surprise inspection could be expected to catch the violations. On the other hand, if a regulation is similar to a building code (as in *See v.*

onceal, the need for surprise will be less pressing, and warrantless

."[12]

requirement has been recognized for searches of pervasively or

in a "pervasively or closely regulated industry."

ppeals has concluded that even "sexually oriented businesses" such

vely or closely regulated businesses."

[8] Id., at 528.
[9] Id., at 541.
[10] Id., at 543.
[11] *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 312 (1978).
[12] 238 F.3d 421 (2000).
[13] *See New York v. Burger,* 482 U.S. 691 (1987) (junkyard industry); *Donovan v. Dewey,* 452 U.S. 594 (1981) (coal mining); *United States v. Biswell,* 406 U.S. 311 (1972) (firearms); *Colonnade Catering Corp. v. United States,* 397 U.S. 72 (1970) (liquor); *see also United States v. Acklen,* 690 F.2d 70 (6th Cir.1982) (pharmacies); *Marshall v. Nolichuckey Sand Co.,* 606 F.2d 693 (6th Cir.1979) (sand and gravel industry), *cert. denied,* 446 U.S. 908 (1980).

105. Even if Plaintiff were operating in such an industry, in *New York v. Burger,* the Supreme Court enunciated three criteria that must be met before any such warrantless inspection or search is constitutionally acceptable: "First, there must be a 'substantial' government interest that informs the regulatory scheme pursuant to which the inspection is made. Second, the warrantless inspections must be 'necessary to further [the] regulatory scheme.' * * * Finally, 'the statute's inspection program, in terms of the certainty and regularity of its application, [must] provid[e] a constitutionally adequate substitute for a warrant.'"

106. The Comprehensive Rental Inspection Code's inspection requirement is warrantless. Defendant has never sought a warrant to gain entry to any of Plaintiff's homes. Plaintiff has insisted Defendant do this, which fell on deaf ears.

107. A rental home owner's rental property is (1) a "house," as specified in the Fourth Amendment; and (2) at least equivalent to the "commercial property" held to be entitled to Fourth Amendment protection.

108. The Code's inspection requirement, as a physical intrusion into a home to collect information that can later be used in a criminal prosecution, is a "search," as contemplated by the Fourth Amendment.

109. The warrantless inspection of rental homes located within the City of Flint is not "necessary to further the regulatory scheme"[14] here: the City could operate a complaint-driven scheme, one that relies upon probable cause, or one that enlists property owners' use of private building inspectors. (Plaintiff must use Flint inspectors and pay their rates, whatever Flint chooses to charge)

110. The Code searches violates Plaintiff' right to be free from unreasonable searches by (1) coercing property owners' consent to such searches, and (2) violating tenants' reasonable expectation of privacy, while (3) maintaining no warrant requirement.

[14] See *McLaughlin v. Kings Island, Div. of Taft*  *Broadcasting Co.* 849 F.2d 990 (6th Cir. 1988).

***Violation of the Fourth Amendment's Warrant Clause***

111. The second clause of the Fourth Amendment affirms "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

112. The Fourth Amendment to the United States Constitution guarantees Plaintiff the right to refuse warrantless government inspections of his home unless the government first secures a valid administrative search warrant issued by a neutral party authorized to issue an administrative search warrant, or unless an emergency exists.

113. The Defendant's Code does not authorize Defendant City of Flint to obtain a warrant to search Plaintiff houses because, *inter alia,* the regulatory scheme (1) does not make provision for a warrant to be obtained; (2) is not predicated on neutral principles; (3) is tantamount to a general warrant inviting an open search; and (4) does not require probable cause. If such warrant clause exists somewhere Plaintiff cannot find it, Defendant does not follow said ordinance.

114. Defendant's Code is not predicated on neutral principles because it arbitrarily discriminates against rental homes, while refraining from inspecting owner-occupied properties of any kind, irrespective of the properties' conditions.

**COUNT II**

**VIOLATION OF RIGHT TO EQUAL PROTECTION PURSUANT TO THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION (42 U.S.C. § 1983)**

115. Plaintiff incorporates by reference all of the foregoing paragraphs as if fully restated herein.

116. The Equal Protection Clause of the Fourteenth Amendment commands that "no state shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

117. The Equal Protection Clause prohibits states from making distinctions that either (1) burden a fundamental right, (2) target a suspect classification, or (3) intentionally treat one differently from others similarly situated without any rational basis for the difference. *Radvansky v. City of Olmsted Falls,* 395 F.3d 291, 312 (6th Cir.2005).

118. To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff "disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, Mich.,* 470 F.3d 286, 299 (6th Cir.2006).

119. The Equal Protection Clause requires more of a state law than nondiscriminatory application within the class it establishes. *McLaughlin v. State of Florida*, 379 U.S. 184, 189—190. It also imposes a requirement of some rationality in the nature of the class singled out.

120. The Equal Protection Clause further requires that, in defining a class subject to legislation, the distinctions that are drawn have "some relevance to the purpose for which the classification is made." *Baxstrom v. Herold*, 383 U.S. 107, 111; *Carrington v. Rash*, 380 U.S. 89, 93; *Louisville Gas Co. v. Coleman*, 277 U.S. 32, 37; *Royster Guano Co. v. Commonwealth of Virginia*, 253 U.S. 412, 415.

121. Governmental classification "must always rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily, and without any such basis," as "arbitrary selection can never be justified by calling it classification." Id., see also *Atchison, T. & S.F.R. Co. v. Matthews*, 174 U.S. 96, 104-105; *American Sugar Ref. Co. v. Louisiana*, 179 U.S. 89.

122. “Simply stated, the Equal Protection Clauses require that individuals be treated in a manner similar to others in like circumstances.” *McCrone v. Bank One Corp.,* 107 Ohio St.3d 272, ¶ 6.

123. Courts must reach and determine the question whether the classifications drawn in a statute are reasonable in light of its purpose-in this case.

124. The City of Flint professes that the purpose of the Code "is to protect the public health, safety and welfare of occupants in <u>all</u> dwellings * * *."

125. Defendant only targets personal landlords with its dwelling Code, while leaving non-rental houses unintruded, houses sold via land contract or option unintruded, and especially rentals owned by the Land Bank, a government entity, unintruded.

126. The Code burdens Plaintiff's fundamental Fourth Amendment rights while exempting similarly-situated property owners from similar burdens.

127. The mandates of the Code violate Plaintiff's right to equal protection of the law, both on its face and as applied to Plaintiff.

**COUNT III**
**UNJUST ENRICHMENT**

128. Plaintiff incorporates by reference all of the foregoing paragraphs as if fully restated herein.

129. Defendant City of Flint has acquired and/or is in possession of funds that it is not entitled to retain.

130. A suit seeking the return of specific funds wrongfully collected or held by a state actor ma be maintained in equity. *Santos v. Ohio Bur. of Workers' Comp.,* 101 Ohio St.3d 74, syllabus. *Accord Judy v. OhioBur. of Motor Veh.,* 100 Ohio St.3d 122; *Ohio Hosp. Assn. v. Ohio Dept. of Human Serv.,* 62 Ohio St.3d 97 (1991).

131. Unjust enrichment exists when there is: (1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment (i.e., the "unjust enrichment" element).

132. Plaintiff has disputed many fees forcefully paid to Defendant.

133. Through its inspection and permitting fee assessments, Defendant City of Flint has acquired funds rightfully belonging to Plaintiff.

134. Defendant acquired these funds to fund unconstitutional searches of Plaintiff's properties.

135. It would be unconscionable for the City of Flint to retain and/or abstain from returning the permitting fees as well as utility turn on and off fees acquired from Plaintiff.

## CONCLUSION

136. Criminal punishment is an irreparable harm.

137. Loss of constitutionally-protected Fourth, Fifth, and Fourteenth Amendment rights and constitutionally-protected property rights causes irreparable harm.

138. Enforcement of the constitutional rights specified herein is in the public interest.

139. Defendant's enforcement of the Comprehensive Rental Inspection Code violates the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution by imposing an unconstitutional condition upon Plaintiff's lawful exercise of his property rights.

140. The Code is unconstitutional as applied to Plaintiff who operates rental homes and has not created any dangerous conditions or other emergencies on his properties.

141. The Code's search requirement is unconstitutional on its face.

142. The Code's search requirement cannot be severed from the Code's "fees" and "certificating" requirements.

143. The unconstitutional portions of the Code cannot be severed from the Code's lawful portions.

144. The Code fails to meet the requirements necessary to obtain a search warrant.

145. As a proximate result of Defendant' policies and practices described above, Plaintiff faces imminent threat of irreparable injury and will continue to suffer irreparable injury, in that he will be deprived of his rights under the Fourth, Fifth, and Fourteenth Amendment of the Constitution.

146. In order to prevent further violation of Plaintiff' constitutional rights by Defendant, it is appropriate and proper that a declaratory judgment be issued, pursuant to 28 U.S.C. 2201 and Fed. Rule of Civil Procedure 57, declaring the City of Flint's enforcement of the Code against Plaintiff to be unconstitutional.

147. Pursuant to 28 U.S.C. 2202 and Fed Rule of Civil Procedure 65, it is appropriate and hereby requested that this Court issue a Temporary Restraining Order and preliminary and permanent injunction enjoining the City of Flint, Michigan from enforcing the Code against Plaintiff.

148. As a direct and proximate result of the Code's mandates and punishments, alongside the threats made by Defendant, Plaintiff's constitutional rights under the Fourth, Fifth, and Fourteenth Amendments have been violated and Plaintiff has suffered injury and damages, insofar as he has been forced to endure and fund unlawful government searches of his houses.

149. Plaintiff cites among other cases *James Ronald Baker v. City of Portsmouth*, case no. 1:14cv512, with similarly situated Plaintiffs and Defendants. In that case, Judge Susan J. Dlott granted Plaintiff's motion for summary judgment stating in part as follows:

" In this case, the Court is satisfied that the warrantless inspections impact a substantial privacy interest, as "the sanctity of private dwellings [is] ordinarily afforded the most stringent Fourth Amendment protection." *United States v. Martinez-Fuerte,* 428 U.S. 543, 561 (1976).*Cf California v. Ciraolo,* 476 U.S. 207, 226 (1986)"

" The inspections are also significantly intrusive. As the Supreme Court has noted, the "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *United States* v. *United States District Court,* 407 U.S. 297, 313 (1972). *See also Camara,* 387 U.S. at 539 ("administrative searches of the kind at issue here are significant intrusions upon the interests protected by the Fourth Amendment")."

A copy of said finding / order is attached herein and made part of this complaint.

Also consider Roy Dearmore et all v. City of Garland,

U.S. District Judge Sam Lindsay writing:

"Inspections and searches of unoccupied property would clearly infringe on the property owner's right under the Fourth Amendment to the United States Constitution to be free from unreasonable search and seizure. In these limited situations, where the property is unoccupied, the protections guaranteed by the Fourth Amendment to the United States Constitution outweigh any interest that the government has in protecting the health, safety or welfare of the public. If it becomes necessary to inspect unoccupied properties, the City could readily, with a modicum of effort, obtain an administrative search warrant to inspect any property that may pose a danger to the public."

" Dearmore has demonstrated a substantial likelihood of success on the merits as to his claim that the Ordinance will violate the Fourth Amendment's protection from unreasonable searches by requiring that the owner of rental property consent in advance to an annual inspection in order to receive a permit, and citing an owner for an offense if he refuses to consent. Dearmore has also demonstrated a substantial threat of immediate and irreparable harm, for which he has no adequate remedy at law, because in order to receive a permit he must agree to abide by all the provisions of the Ordinance, which includes agreeing in advance to a warrantless inspection. Dearmore also is subject to being fined, or even arrested, for a misdemeanor violation. Each day for which he is not in compliance or violates the Ordinance constitutes a separate offense. Dearmore has further demonstrated that granting a preliminary injunction will subject the City to minimal harm, if any, while protecting him from irreparable harm which could not otherwise be adequately remedied at law. The City, with minimal effort, may amend its ordinance to include the owner's right of refusal of an inspection and include a warrant requirement upon that refusal. The court determines that the effect, if any, on the City's regulatory scheme would be negligible. Finally, Dearmore has demonstrated that a preliminary injunction will not disserve the public interest, as enjoining the enforcement of an unconstitutional provision of the Ordinance promotes rather than disserves the public interest. Enjoining such enforcement ensures that private citizens will not be subject to unconstitutional actions by the City. Moreover, constitutional violations should be enjoined as soon as practicable; otherwise, the Constitution is of little value.

Accordingly, the court grants Plaintiff Roy Dearmore's request for a preliminary injunction as to section 32.09(F) of the Ordinance that requires a person who rents or leases a single-family dwelling to allow an inspection of the rental property as a condition of issuing a permit, and that criminally penalizes a lessor for refusing to allow an inspection;"

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendant, and that the Court:

(1) Declare that the search provision in the City of Flint Comprehensive Rental Inspection Code authorizing warrantless searches without probable cause is unconstitutional, both facially and as applied to Plaintiff;

(2) Declare that the provisions of the Comprehensive Rental Inspection Code wholly reliant upon the unconstitutional search, including but not limited to the monetary extraction for inspections and the certificate requirement, violate Plaintiff's Fourth Amendment rights;

(3) Declare that the Comprehensive Rental Inspection Code is insufficient, without more, to serve as a basis for the City to obtain an administrative warrant;

(4) Declare that through the imposition of monetary assessments on Plaintiff, precipitated by the Comprehensive Rental Inspection Code, Defendant City of Flint has been and continues to be unjustly enriched;

(5) Enjoin Defendant from directly enforcing the Comprehensive Rental Inspection Code's warrantless search requirement;

(6) Enjoin Defendant from indirectly enforcing the Comprehensive Rental Inspection Code's warrantless search requirement by criminally or civilly prosecuting Plaintiff, stripping him of the right to rent his property, or otherwise;

(7) Enjoin Defendant from attempting to seek and obtain a warrant, predicated on the Comprehensive Rental Inspection Code, to search Plaintiff' properties;

(8) Mandate the return of any and all Comprehensive Rental Inspection Code funds paid by Plaintiff to Defendant City of Flint, to the extent that the City has been unjustly enriched; including funds paid for turning on and off water for inspection purposes, and bills generated thusly for supposed water charges; and other utility bills that have had to be paid for for said inspections.

(9) Enjoin Defendant City of Flint from refusing water service to Plaintiffs tenants to coerce warrantless searches;

(10) Pursuant to 42 U.S.C. §1988 and other applicable law, award Plaintiff his costs and expenses incurred in bringing this action;

(11) Award nominal damages against Defendant and in favor of Plaintiff to compensate Plaintiff for violations of his constitutional rights;

(12) Reimburse Plaintiff for amounts he has paid, in inspection fees related to unconstitutional inspections, and any penalties assessed pursuant to said code, to Defendant City of Flint;

and

(13) Grant such other and further relief as the Court deems equitable, just, and proper.

Plaintiff reserves the right to amend this complaint should such issue become known which might relate to said complaint and / or be relevant to the instant case.

Plaintiff requests a trial by Jury.

Dated: 3-11-16

Plaintiff's Signature

Karter Landon

Plaintiff's Printed Name

5101 Auker Dr.

Street Address

Flint MI 48507

City, State, Zip Code

810-252-9335

Telephone Number

alandlord@hotmail.com

Email address

# EXHIBIT A

# City of Flint, Michigan

## Certified Copy

**Ordinance: 3707**

Third Floor, City Hall
1101 S. Saginaw Street
Flint, Michigan 48502
www.cityofflint.com

**File Number: 080176.1** **Enactment Number: 3707**

**Amendment/Ordinance/Chapter 24 [Housing]/Article I [2003 International Property Maintenance Code]/Addition of Section 24-4 [Adoption - Comprehensive Rental Inspection Code]/Correction**

**An ordinance to amend Chapter 24 [Housing], Article I [2003 International Property Maintenance Code] of the Code of the City of Flint by the addition of Section 24-4 [Adoption - Comprehensive Rental Inspection Code]. [NOTE: correction = Page 12 of City of Flint Comprehensive Rental Inspection Code.]**

State of Michigan
County of Genesee

I, Inez M. Brown, hereby certify that the foregoing is a true and complete copy of Ordinance No. 080176.1, offered and passed with the following vote by the Flint City Council at a meeting held on 5/12/2008.

The motion was made by Councilperson Gonzales and seconded by Councilperson Kincaid.

Aye: 5 Councilperson Poplar, Councilperson Nelson, Councilperson Hill, Councilperson Neeley, and Councilperson Gonzales
No: 4 Councilperson Loyd, Councilperson Sims, Councilperson Ananich, Councilperson Kincaid

Inez M. Brown (signature)
**Inez M. Brown**

7-19-2010
**Date Certified**

ORDINANCE NO. 3707

**An ordinance to amend the Flint City Code of Ordinances by amending Chapter 24 by adding Section 24-4, Adoption – Comprehensive Rental Inspection Code.**

**IT IS HEREBY ORDAINED BY THE PEOPLE OF THE CITY OF FLINT:**

**Sec. 1. That the Code of the City of Flint shall be amended by the the addition of Section 24-4; which shall read as follows:**

***ARTICLE I. 2003 INTERNATIONAL PROPERTY MAINTENANCE CODE***

**§ 24-4 ADOPTION – COMPREHENSIVE RENTAL INSPECTION CODE.**

(a) Pursuant to the provisions of MCLA § 117.3(k), the 2003 International Property Maintenance Code and any future additions and amendments as published by the International Code Council, Inc. and enforced by the City of Flint, together with City of Flint Administrative Amendments to the Property Maintenance Code, and the Comprehensive Rental Inspection Code, as are adopted by the City Council from time to time and filed in the office of the City Clerk are hereby adopted by reference and attached hereto.

**§§ 24-5 - 24-97 RESERVED.**

**Sec. 2. This ordinance shall become effective immediately upon publication.**

**Adopted this 12th day of May A.D., 2008.**

**Donald J. Williamson, Mayor**

**Inez M. Brown, City Clerk**

**APPROVED AS TO FORM:**

**Trachelle C. Young, Chief Legal Officer**

# City of Flint

## Comprehensive Rental Inspection Code

Adopted: MAY 12, 2008

Published: MAY 16, 2008

Effective Immediately upon Publication

Donald J. Williamson
Mayor

FORWARD:

These rules and regulations are to be followed in partnership with the 2003 International Property Maintenance Code adopted May 5, 2004, and represent the City of Flint Comprehensive Rental Inspection Code. This Code shall be enforced in conjunction with the 2003 International Property Maintenance Code, shall be made a part of the Property Maintenance Code of the City of Flint by reference herein, and shall have the full force and effect of the law.

# CHAPTER 9
# RENTAL PROPERTIES

## SECTION 901
## REGISTRATION OF RENTAL PROPERTY

**901. 1 Registry of Owner's Name.**

a. Every owner of a rental dwelling, if rented or let to a lessee in whole or in part, shall file a notice with the City of Flint containing:

1. The owner's name.

2. The street address or P.O. Box number, city name and zip code at which the owner can be contacted, and/or served with process if the need should arise.

3. The owner's driver's license number.

4. Any information as requested to provide proof of ownership.

5. The number of rooms in each apartment or dwelling unit.

6. The number of persons occupying each apartment or dwelling unit.

b. Such notice may be filed by regular mail or personal delivery.

**901.2 Registry of Agent's Name, Registered Agent.**

a. Every owner of a rental dwelling shall file with the City of Flint a notarized notice containing the name and address of the agent of such property for the purpose of receiving process.

b. The name of the owner and the owner's agent shall be filed for the purpose of receiving process and such notice may be filed by regular mail.

**901.3 Registry of Rental Dwellings Required.**

a. Either the owner or the owner's registered agent shall register a rental dwelling with the City.

b. All rental dwellings shall be registered with the City.

**901.4 Registry and Licensing of Existing Rental Dwellings.**

a. The City shall maintain a register of all rental dwellings and rental units containing the following information:

1. The address and permanent parcel number of the rental dwelling.

2. The number and type of rental units in the dwelling.

3. The name, business and residence.street addresses, and driver's license number of the owner(s) and other information such as deed, etc., as requested to provide proof of ownership.

4. The name, business and residence street addresses of the registered agent as designated in writing by the owners.

5. The address and phone number where the owner and registered agent will accept notices and calls from the City.

6. The currently assigned rental license number.

7. The name, address and telephone number of the resident agent, if the owner is a corporation, LLC, partnership or non-profit entity.

**901.5 Registry and Licensing of New Rental Dwellings.** The owner or registered agent of a new rental dwelling, or of any dwelling newly converted to a rental dwelling, shall register the rental dwelling prior to allowing occupancy of any new rental units and secure the necessary license.

**901.6 Change in Register Information.** The owner or registered agent of rental dwellings already registered with the City shall re-register within sixty (60) days after any change occurs in registration information.

a. A new owner of a registered dwelling shall re-register the dwelling.

1. A rental license must be secured by the new owner or registered agent within thirty (30) days of assuming ownership.

**901.7 Time to Register Existing Rental Dwellings.**

a. All rental dwellings existing as of the effective date of this Comprehensive Rental Inspection Code shall be registered immediately within thirty (30) days.

b. Currently, registered units shall be registered no later than July 1st every three (3) years or as specified in Chapter 26 of the Flint City Code.

1. The City shall order registration prior to that date for any dwelling cited in a notice required by this Chapter.

c. Failure to comply with such an order is a violation of this Comprehensive Rental Inspection Code.

**901.8 Inaccurate or Incomplete Register Information.**

a. It shall be a violation of the Comprehensive Rental Inspection Code for an owner or registered agent to provide inaccurate information for the registration of rental dwellings, or to fail to provide information required by the City for registration.

b. In those cases in which the owner is not a natural person, the owner information required by the City for registration shall be that of either: (1) the president, (2) the general manager, (3) the chief executive officer of the organization, or (4) the executor.

c. Where more than one natural person has an ownership interest, the required information shall be provided for each owner.

## SECTION 902
## INSPECTION OF RENTAL PROPERTY

**902.1 Responsibility Before Occupancy.** The owner or registered agent of any unit shall be responsible for meeting the Health and Safety Standards of Property Maintenance Code of the City of Flint and its pertinent Administrative Amendments prior to allowing the unit to be occupied.

**902.2 Application for Certificate of Inspection, Inspection and Issuance Procedures, Conditions for Issuance of Temporary Certificates, Time for Application, Application By Occupant in Default of Owner or Registered Agent, Fee.**

a. An owner or registered agent shall apply for a certificate of inspection.

b. Inspection and issuance of certificate shall be in accordance with the requirements of this Comprehensive Rental Inspection Code and with procedures established by the enforcing agency.

c. The enforcing agency may issue such temporary certificates upon application in cases where inspections are not conducted within thirty (30) days.

d. Temporary certificates may also be issued for premises with violations of record, whether existing before or after the effective date of this Comprehensive Rental Inspection Code, when the owner or registered agent can show proof of having undertaken to correct such conditions, or when the municipality has been authorized to make repairs, or when a receiver has been appointed and/or when an owner rehabilitation plan has been accepted by the court.

e. In no event shall a temporary certificate be requested when conditions exist that constitute a hazard to the health or safety of those who may occupy premises prior to inspection, or re-inspection.

f. All inspection fees shall be paid by the applicant at the time of registration and application for inspection, in accordance with the schedule of fees in Chapter 26 of the Flint City Code.

*

**902.3 Issuance of Certificate of Inspection: Violation Not To Prevent Issuance: Health or Safety Hazards, Non-Issuance.**

a. No rental unit shall be occupied unless a certificate of inspection has been issued by the enforcing agency.

b. The certificate shall be issued only upon an inspection of the premises by the enforcing agency, except as provided in 902.2 hereof.

*

c. A violation of this Comprehensive Rental Inspection Code shall not prevent the issuance of a certificate, but the enforcing agency shall not issue a certificate when the existing conditions constitute a hazard to the health or safety of those who may occupy the premises.

d. Inspections shall be made prior to first occupancy of any rental property.

e. Where first occupancy will occur before the effective date of this Comprehensive Rental Inspection Code, inspection shall be made within one year after the effective date of this Comprehensive Rental Inspection Code.

f. Upon a finding that there are no violations of the 2003 International Property Maintenance Code or the Administrative Amendments thereto, and that the premises are otherwise fit for occupancy, the certificate shall be issued.

g. If the finding is of a condition that would constitute a violation of the 2003 International Property Maintenance Code or the Administrative Amendments thereto, no certificate shall be issued and an order to comply with the Comprehensive Rental Inspection Code shall be issued immediately and served upon the owner or registered agent in accordance with 902.2

h. On re-inspection and proof of compliance, the order shall be rescinded and the certificate issued.

**902.4 Withholding Certificates Pending Compliance, Continued Vacancy of Unoccupied Premises, Vacation of Occupied Premises Until Compliance, Conditions of Issuance, Suspension of Certificate and Vacation, Suspended Rentals, Conditions, Revival of Rental Obligations, Disposition of Rentals for Period of Suspension, Termination Prior to Repairs.**

a. The issuance of approvals and a license does not grant a warranty, express or implied, as to the health, safety and welfare of life and property in conjunction with the property.

mpetragallo@ nannckay.com

b. The City and its agents shall not be held liable for any damages in conjunction with inspections, approvals or licensing acts that are conducted in good faith and in the lawful discharge of duties in conjunction with this Comprehensive Rental Inspection Code.

c. When a certificate of inspection is withheld pending compliance, no premises which have not been occupied for dwelling or rooming purposes shall be so occupied, and those premises which have been or are occupied for dwelling or rooming purposes may be ordered vacated until re-inspection and proof of compliance, at the discretion of the enforcing officer.

d. A Certificate of Inspection shall be issued on condition that the premises remain in safe, healthful and fit condition for occupancy.

e. If upon re-inspection the enforcing agency determines that conditions exist which violate the 2003 International Property Maintenance Code or the Administrative Amendments thereto, the certificate shall be immediately suspended as to affected areas, and the areas may be vacated as provided in the preceding paragraph hereof.

**902.5 Inspections.**

a. **General**. The Development Division must inspect all properties held for residential rent every three years. All fees are paid in accordance with the Comprehensive Rental Inspection Code as reflected in the Fee Schedule attached hereto and made a part hereof as Attachment 1.

b. **Method for Conducting Inspections**. Inspections shall be conducted in a manner best suited to ensure compliance with this Comprehensive Rental Inspection Code. Neighborhood Enforcement Officials may request permission to enter any rental property during regular business hours to conduct an inspection. In case of emergency, the Official may enter the rental property at any time. In addition, inspections may be conducted on one or more of the following bases:

1. **By appointment**. The landlord, owner, or registered agent sets an appointment with the Development Division

2. **Area Basis**. Where all rental property within a predetermined geographical area will be inspected simultaneously, or within a specified period of time;

3. **Complaint Basis**. Where a rental property is reported to be in violation of the Comprehensive Rental Inspection Code;

4. **Violation Basis**. Where a Neighborhood Enforcement Officer, while conducting his or her duties, discovers a violation of the Comprehensive Rental Inspection Code.

5. **Recurrent Violation Basis**. Where a rental property has a high incidence of recurrent or uncorrected violations, requiring more frequent inspections to ensure compliance with this Comprehensive Rental Inspection Code.

c. **Three Year Period**. In no event will the period of time between inspections exceed three years for any rental property.

d. **Duties of Landlord**. Once notified by the Development Division that an inspection is required, the landlord, owner, or registered agent must:

1. Provide access to the rental property if the lease provides the owner, landlord, or registered agent a right of entry;

2. Provide access to areas surrounding the rental property that are open to public view;

3. Notify the tenants of the Development Division's request to inspect the rental property and make a good-faith effort to obtain permission for an inspection from them, and arrange for the inspection. If the tenant has vacated the rental property after the Development Division request for inspection, the landlord, owner, or registered agent must notify the Development Division within 10 days after the rental property is vacated.

4. Provide access to the rental property if a tenant of that property has made a complaint to the Development Division.

5. Pay any and all fees or fines necessary to comply with this Comprehensive Rental Inspection Code, as defined by the Master Fee Schedule, which is adopted from time to time by the Flint City Council.

**902.6 Basis for Non-Cyclical Inspections.** An inspection shall be conducted in the manner best calculated to secure compliance with this Comprehensive Rental Inspection Code. The following is a non-comprehensive list of bases upon which an inspection may be conducted:

a. An area basis, such the all regulated premises in a pre-determined geographical area will be inspected simultaneously, or within a specified period of time.

b. A complaint basis such that those premises which are reported to be in violation of this Comprehensive Rental Inspection Code.

c. A violation that is discovered by enforcement personnel during the execution of his or her duties.

d. A recurrent violation basis, those premises which are found to have a high incidence of recurrent or uncorrected violations will be inspected more frequently.

**902.7 Ownership of Record Notification.**

a. Any person owning, having an interest in or responsible for a building that is destroyed by fire, or which otherwise deteriorates to such a state that it is uninhabitable, must

notify the City of Flint Development Division of his or her current address within seven (7) days of the fire or other event making said building uninhabitable.

b. Any person owning, having an interest in, or responsible for a building which is continuously vacant for a period of six (6) weeks must notify the City of Flint Development Division of his or her current address within seven (7) days of the expiration of the sixth week of vacancy.

c. Any such person required to give notice as specified above must also notify the City of Flint Development Division within seven (7) days of change of address.

d. The duties imposed by these notice requirements shall be effective for as long as damaged or deteriorated building remains in disrepair, and for as long as any unoccupied building remains.

**902.8 Temporary Certificate Authorized.** Where a license and certificate of registration is required, the City may issue a temporary license and certificate of registration for the following reasons:

a. For a newly registered rental dwelling until such time as the City is able to make a compliance inspection.

b. To enable the City to balance compliance inspection workloads.

c. To coincide with compliance time periods set forth in a notice citing violation of this Comprehensive Rental Inspection Code if such periods extend beyond the expiration date of a certificate.

**902.9 Recording of Violation in Registry, Notice, Contents, Correction of Violations, Inspection.**

a. If, upon inspection, the premises, or any part thereof, is found in violation of any provision of this Comprehensive Rental Inspection Code, the violation shall be recorded by the enforcing agency in the registry or owners and premises.

b. The owner or registered agent, and in the discretion of the enforcing agency, the occupant, shall be notified in writing of the existence of the violation.

c. The notice shall state the date of inspection, the name of the inspector, the nature of the violation, and the time within which the correction shall be completed.

d. A violation, which is determined by the inspector to constitute a hazard to the health and safety of the occupants, under circumstances where the premises cannot be vacated, shall be ordered corrected within the shortest reasonable time.

e. Compliance shall be obtained and notice given the enforcing agency by the owner or registered agent immediately.

f. The enforcing agency shall re-inspect after such reasonable time for the purpose of ascertaining whether the violations have been corrected, and if not, take appropriate action to obtain immediate compliance.

**902.9 Continuity of Inspection Procedures and Documents.** With the adoption of additional codes or regulations, all existing forms, letters, and printings shall continue in effect until existing stock is used, regardless of changes in §, subsection or chapter number changes.

**902.10 Fees to Be Charged on Complaint Inspection.**

a. Inspection fees as set forth in Chapter 26, Flint City Code will be due and payable by the owner and/or registered agent under any of the following conditions;

b. When a "complaint" inspection results in a "Violation Notice" being issued and upon re-inspection, after the expiration date of such notice of written time extension, violations have not been corrected; and/or

c. When a "complaint" inspection is made upon a property that is not current in License and Registration requirements; and/or

d. When property is occupied contrary to a violation notice, which prohibits occupancy.

**902.11 Licensing of Rental Property and/or Dwellings.**

a. Rental property shall be licensed and fees paid as outlined in Chapter 26 of the Flint City Code.

b. Licenses will be issued upon receipt of the license fee and registration information, as required by this Comprehensive Rental Inspection Code.

c. Licenses are not transferable to subsequent owner, regardless of relationship to the current licensed owner.

**902.12 License and Certificate of Registration Required.** Rental dwellings containing one (1) or more rental unit(s) shall not be occupied for more than sixty (60) days without a license and certificate of registration or a temporary license and certificate of registration.

**902.13 Issuance of License and Certificate of Registration.**

a. The City shall issue a license and certificate of registration for a rental dwelling where the City finds that the rental dwelling and accessory buildings and yards does not have

outstanding violations on file in the development division office that would prevent occupancy of the property.

b. The owner or registered agent must have paid all fees and debts to the City resulting from the provisions of this Comprehensive Rental Inspection Code prior to the issuance of a license and certificate of registration.

**902.14 Validity of License and Certificate of Registration.**

a. A license and certificate of registration shall be valid for such time period as established by ordinance, unless suspended as set forth below.

b. The building official may authorize up to six (6) additional months on the first certificate for a dwelling for the sole purpose of balancing inspection workloads for the city or for the owner or registered agent.

c. Each license and certificate of registration shall contain an expiration date.

d. Where ownership of a dwelling changes during the period of a certificate's validity, the new owner or registered agent shall obtain a new license and certificate of registration which shall expire on the same date as the certificate originally issued.

e. The issuance of such a new certificate shall be conditioned upon the new owner's and the registered agent's compliance with the provisions of this Comprehensive Rental Inspection Code.

**902.15 Suspension of License and Certificate of Registration.**

a. The building official shall suspend a license and certificate of registration if the owner or registered agent has not complied with a violation notice to repair.

b. The building official shall issue a notice of suspended license and certificate of registration to the owner or registered agent making not of the suspension in the registry of rental dwellings.

c. The notice of suspended license and certificate of registration will inform the owner or registered agent.

d. That the license and certificate of registration has been suspended as of the date of the notice.

e. Of the reason for the suspension.

f. That it is unlawful for any rental unit to be occupied after the date of suspension of the license and certificate of registration.

g. That any rental unit which is vacant at the time of suspension or which becomes vacant during the period of suspension shall not be rented or reoccupied until the license and certificate of registration is issued.

h. The license and certificate of registration is to be returned to the building official within ten (10) days.

i. That the tenants may be entitled to establish an escrow account for rent monies as provided for under State law.

j. Failure to comply with the terms of suspension as set forth above shall be a violation of this Comprehensive Rental Inspection Code.

**902.16 Notifying Tenants of Suspended Certificate.**

a. The City shall send a copy of a notice of suspended license and certificate of registration to each dwelling unit within a certified rental dwelling;

b. The copy shall be addressed "Occupant" and shall be sent by regular mail;

c. Failure of an occupant to receive a copy shall not invalidate any other proceedings authorized by this Comprehensive Rental Inspection Code.

**902.17 Appeal of Suspension of License and Certificate of Registration.** Suspension and/or denial of a license and certificate of registration may be appealed to the Construction Board of Appeals as outlined in this Comprehensive Rental Inspection Code.

**902.18 Reinstatement of Suspended License and Certificate of Registration.**

a. A suspended license and certificate of registration shall be reinstated if the enforcing agency determines that the rental dwelling has been brought into compliance with the standards of this Comprehensive Rental Inspection Code.

b. The City shall notify the owner or registered agent by regular mail, noting the reinstatement in the registry of rental dwellings.

c. Reinstatement of the Certificate shall not extend or change the expiration date of the Certificate.

d. A reinstatement fee of twenty-five dollars ($25) and all inspection fees shall be paid by the owner or registered agent prior to the reinstatement of the Certificate.

**902.19 Expiration of License and Certificate of Registration.**

a. A license and certificate of registration may not be extended beyond its expiration date.

b. No unit within a rental dwelling, either single-family, multiple dwelling, rooming house, or hotel, shall be occupied for more than sixty (60) days after the expiration of a license and certificate of registration.

**902.20 Notification of Owner.** At least sixty (60) days prior to the expiration of a license and certificate of registration, the City may notify the registered owner or registered agent to re-register.

**902.21 Limits on Remedy.**

a. It is the duty of the owner of a rental dwelling to tri-annually acquire and maintain a license for such rental dwelling in order to be entitled to rents and/or to evict tenants and/or occupants residing or located on the premises of the rental dwelling.

b. When the license for the rental dwelling has been suspended, or has not been issued, and the rents thereafter withheld are not paid into an escrow account established pursuant to state law, actions for rent and for possession of the premises for nonpayment of rent may be maintained, subject to such defenses as the tenant or occupant may have upon the lease or contact.

**902.22 Re-Issuance of License and Certificate of Registration.** Any new license and certificate of registration issued to an owner or registered agent for a rental dwelling shall have an expiration date three (3) years after the expiration date that was shown on the previous certificate, regardless of when the new certificate is issued, or as outlined in Chapter 26 of the Flint City Code.

## SECTION 903
## COMPLAINTS

**903.1 Tenant/Landlord Property Complaints.**

a. When an alleged violation of the 2003 International Property Maintenance Code or the City of Flint's Administrative Amendments is reported on a registered rental property, a Neighborhood Enforcement Officer shall investigate, and if aq violation is detected, the Neighborhood Enforcement Officer shall post a copy of a Notice of Violation on the property, and sent a Notice of Violation to the owner or registered agent.

b. The Notice of Violation may be sent by certified mail or by regular mail and shall state:

1. That a complaint has been made.

2. The nature of the alleged violation.

3. The provision of the 2003 International Property Maintenance Code or the City of Flint's Administrative Amendments indicated as being violated.

4. When a verification inspection will be conducted to see if the reported violation exists.

c. Emergency complaints will be investigated as soon as possible upon receipt of the complaint.

d. Emergency complaints shall include, but are not limited to:

1. No heat.

2. No water.

3. Major electrical problems.

\\gis\lgl$\shared\Ordinance Files\IPMC2003Amended\RentalInspectionCode2008.doc
bag:1/31/2008

Fee Schedule

EM SUBMISSION NO.: 2013EM030

PRESENTED: 4-24-13

ADOPTED: 4-26-13

**RESOLUTION APPROVING AND ADOPTING THE AMENDED MASTER FEE SCHEDULE**

**BY THE EMERGENCY MANAGER:**

Pursuant to the Home Rule Cities Act, *MCL 117 et seq*, a local unit of government may defray the cost of services by collection of user fees; and

User fees are charged for services that benefit the individual or entity charged, and avoid municipal subsidization of services not provided to the general public; and

It is the desire of the City of Flint to ensure that user fees reflect the cost of services; and

The City's Department of Community and Economic Development (DCED) determined the need for adjustments to certain fees charged by the City. Specifically, the DCED recommends that the Tax Abatement Application fee be reduced from $2,564 to $1,000, and that the Section 108 Loan Application fee be reduced from $9,457 to $2,000; and

The Brownfield Redevelopment Authority also revised its policies in 2011 and set fees for its Brownfield Tax Credit Application as follows: less than $1 million = $500; $1 million to $10 million = $1,000; and $10 million and over = $2,000; and

**IT IS RESOLVED** that the following fees are established and set forth in the attached Amended Master Fee Schedule:

Tax Abatement Application = $1,000
Section 108 Loan Application = $2,000
Brownfield Tax Credit Application less than $1 million = $500
Brownfield Tax Credit Application $1 million to $10 million = $1,000
Brownfield Tax Credit Application $10 million and over = $2,000.

**IT IS RESOLVED** that the attached Amended Master Fee Schedule be approved and implemented as outlined, attached hereto and made a part hereof, and kept on file with the City Clerk.

**IT IS FURTHER RESOLVED** that this amendment to the Master Fee Schedule replaces the Amended Master Fee Schedule adopted on January 24, 2013, and supersedes all prior versions of the Master Fee Schedule as published internally.

**FURTHER RESOLVED** that the appropriate City Officials be and are hereby authorized to do all things necessary to implement and collect the attached user fees, effective immediately upon signature of the Emergency Manager.

**APPROVED AS TO FORM:**

**Peter M. Bade, City Attorney**

**Michael K. Brown, City Administrator**

**EM DISPOSITION:**

**ENACT** ✓ **FAIL** ______

**Edward J. Kurtz, Emergency Manager**

S:\CBO\Opinions & Referrals\Fee Study\MasterFeeScheduleResolution.04.18.13.doc

# City of Flint
## Master Fee Schedule

| Division | CCO Ref | Service Name / Fee Type | Fee |
|---|---|---|---|
| **TRANSPORTATION, DEVELOPMENT and ZONING DEPARTMENT** | | | |
| **Electrical** | 26-5 | Registration Fee:<br>Electrical Contractor | $ 30.00 |
| **Plumbing** | 26-5 | Registration Fee:<br>Plumbing Contractor | $ 15.00 |
| **Mechanical** | 26-5 | Registration Fee:<br>Mechanical Contractor | $ 15.00 |
| **Engineering** | 26-5 | Photocopies: | |
| | | Letter/Legal | $ 1.00 |
| | | Ledger | $ 2.00 |
| | | Blueprints: | |
| | | 12" x 24" | $ 2.00 |
| | | 18" x 36" | $ 4.00 |
| | | 24" x 36" | $ 6.00 |
| | | Large (per sq. ft.) | $ 1.00 |
| **Permit Fees** | 26-5 | Garbage Receptacles: Large Moveable | $ 45.00 |
| **Permit Fees-Building: New Construction, Alterations, Renovations, Remodeling (based on cost of same)** | 26-5 | Cost of Project: | Minimum $140.00 per Inspection |
| | | Up to $2,000 | $ 140.00 |
| | | $2,001 - $50,000 | $ 140.00 |
| | | **Plus, per $1,000 or part thereof over $2,000** | $ 20.00 |
| | | $50,001 - $500,000 | $ 1,100.00 |
| | | **Plus, per $1,000 or part thereof over $50,000** | $ 15.00 |
| | | $500,001 - $1,000,000 | $ 7,850.00 |
| | | **Plus, per $1,000 or part thereof over $500,000** | $ 10.00 |
| | | $1,000,001 and over | $ 12,850.00 |
| | | **Plus, per $1,000 or part thereof over $1,000,000** | $ 7.00 |
| | | Re-inspection, if necessary | $ 140.00 |
| **Permit Fees-Fence** | 26-5 | <$1,000 in cost, requiring only one inspection<br>>$1,000 in cost, same as for new construction<br>Plus, per $1,000 or part thereof over $2,000 | $140.00 (All fence permits requiring 1 inspection) |

**City of Flint**
**Master Fee Schedule**

| Division | CCO Ref | Service Name / Fee Type | Fee |
|---|---|---|---|
| **Permit Fees-Signs** | 26-5 | All Types: $1.00 to $2,000 | $ 140.00 |
| | | $2,001 to $50,000 | $ 140.00 |
| | | Plus, per $500 over $2,000 | $ 27.00 |
| | | $50,001 and over | $ 1,623.00 |
| | | Plus, per $500 over $50,001 | $ 12.00 |
| | | Trailers or Temporary Signs: Over 6 square feet in area, per move or relocation between site. | $ 155.00 |
| **Permit Fees-Signs (cont'd)** | 26.5 | Signs erected over public property, additional fee per square foot of area (one side) | $ 18.00 |
| | | Signs, Types 3 & 4 on public property (excluding charitable purposes): | |
| | | Annual Privilege Fee | $ 225.00 |
| | | Plus, per square foot of area | $ 1.00 |
| **Permit Fees-Reroofing or Residing** | 26-5 | Value <$5,000 requiring one inspection | $ 140.00 |
| | | Value >$5,000, same as new construction | $ 140.00 |
| | | Plus, per $1,000 or part thereof over $2,000 | $ 27.00 |
| | | Removal of Aluminum Siding | $ 140.00 |
| **Permit Fees-Certificate of Use & Occupancy** | 26-5 | Issued w/Building Permit for: | |
| | | Change in Use | $ 140.00 |
| | | Same or Existing Prior Use | $ 140.00 |
| **Permit Fees-Inspections** | 26-5 | Fee per Hour (special requests & survey inspections, during regular working hours.) | $ 200.00 |
| **Permit Fees-Demolition or Moving** | 26-5 | Minimum Fee | $ 140.00 |
| | | Plus, per 1,000 cubic of structure | $ 9.00 |
| | | Special services or procedures-fee established by building official. | |
| | | Residential Garages | $ 140.00 |
| **Permit Fees-Miscellaneous** | 26-5 | Temporary structures, per 6 months | $ 270.00 |
| **Permit Fees-Parking Lot & Driveway Construction** (all types) | 26-5 | 1,000 square feet and over: Same Fee as for New Construction | same as new |
| **Permit Fees-Swimming Pools** | 26-5 | Same Fee as for New Construction | same as new |
| **Permit Fees-Tank Removal** | 26-5 | Above Ground & Underground Storage Tanks | $ 140.00 |

## City of Flint
## Master Fee Schedule

| Division | CCO Ref | Service Name / Fee Type | Fee |
|---|---|---|---|
| **Permit Fees-Trades** | 26-5 | Hourly Rate for Technical Trades | $ 200.00 |
| **Permit Fees-Appeals** | 26-5 | Building Code Board of Appeals | $ 350.00 |
| **Permit Fees-Plan Examination (based on cost of project)** | 26-5 | $0 - $50,000 | $ 330.00 |
| | | $50,001 - $500,00 | $ 336.00 |
| | | **Plus, per $1,000 or part thereof over $50,000** | $ 9.00 |
| | | Over $500,000 | $ 4,386.00 |
| | | **Plus, per $1,000 or part thereof over $500,000** | $ 2.00 |
| | | Plan examination, mechanical, plumbing, electrical or site work only, per hour | $ 200.00 |
| | | Simple alteration and additions, per hour | $ 200.00 |
| | | Plan examination done by outside agency, City Administrative Charge | N/A |
| **Permit Fees-Refund Policy** | 26-5 | Administrative Fee for all cancelled or transferred permits | $ 75.00 |
| | | Additional work already performed, per hour. | $ 200.00 |
| **Permit Fees-Re-Submissions** | 1/1/1993 | Construction Projects/Approval of pre-manufactured units, per hour (1 hour minimum) | same as new |
| **Permit Fees-Penalties** | 26-5 | (for work begun prior to obtaining proper permit) | |
| | | Up to $5,000 | $ 412.00 |
| | | Over $5,000 | $ 825.00 |
| **Permit Fees-Rentals** | 26-5 | Rental License & Registration Fee (one-time) | $ 112.00 |
| | | Inspection Fee (compliance w/IPMC) (tri-annual) Multi-Family Dwellings: | |
| | | Base Fee | $ 105.00 |
| | | Per Building (after one) | $ 38.00 |
| | | Per Unit (after one, less than 5) | $ 90.00 |
| | | Per Unit (five through fifty) | $ 75.00 |
| | | Per Unit (51 & over) | $ 45.00 |
| | | Single Family Dwellings | $ 225.00 |
| | | Two-Family Dwellings | $ 300.00 |

inspection fee

# City of Flint
## Master Fee Schedule

| Division | CCO Ref | Service Name / Fee Type | Fee |
|---|---|---|---|
| Permit Fees-Rentals (cont'd) | 26-5 | Inspection Fee (compliance w/IPMC) (additional inspections after two or complaint inspection) | $ 120.00 |
| | 26-5 | Penalty fees for non-registration and inspection: | |
| | | 1 & 2 Family | $ 450.00 |
| | | 3-10 Units | $ 600.00 |
| | | Over 10 Units | $ 1,000.00 |
| Permit Fees-Basic Building Code | 26-5 | Disconnect sanitary sewer service line & water service line: | |
| | | Water svc line 2" or less in diameter | $ 169.00 |
| | | Water svc line >2" in diameter | $ 720.00 |
| | | Sanitary sewer svc line 12" or less in diam. | $ 169.00 |
| | | Sanitary sewer svc line >12" in diam. | $ 720.00 |
| Permit Fees-Mechanical Fees | 26-5 | Minimum Fee | $ 140 per inspection |
| | | Permit Base Fee | $ 75.00 |
| | | Water Heaters | $ 15.00 |
| Permit Fees-Mechanical: Heating Equipment | 26-5 | Furnaces & Boilers | $ 60.00 |
| | | Central Air Conditioning & Heat Pump | $ 57.00 |
| | | Duct System/Hydronic Piping | $ 57.00 |
| | | Power Exhaust/Plus Base Fee | $ 14.00 |
| | | Exhaust Fan (for Bathroom & Kitchen Hoods) | $ 14.00 |
| | | Flue Damper/Vent Damper Plus Base Fee | $ 14.00 |
| | | Humidifiers/Plus Base Fee | $ 14.00 |
| | | Electronic Air Cleaner/Plus Base Fee | $ 14.00 |
| | | Condensate Pumps/Plus Base Fee | $ 14.00 |
| | | Gas Piping, New Installation, Each Outlet | $ 14.00 |
| | | Chimney | $ 39.00 |
| Permit Fees-Mechanical: Solid Fuel | 26-5 | Complete Wood Stoves, Fireplace Inserts, Add-on Furnaces | $ 52.00 |

**City of Flint**
**Master Fee Schedule**

| Division | CCO Ref | Service Name / Fee Type | Fee |
|---|---|---|---|
| **Permit Fees-Mechanical: Solar Equipment** | 26-5 | Solar Equipment System | $ 57.00 |
| | | Additional Panels | $ 14.00 |
| | | Solar Domestic Hot Water System | $ 57.00 |
| | | Additional Panels | $ 14.00 |
| **Permit Fees- LPC & Fuel Oil Tanks** | 26-5 | LPC & Fuel Oil Tanks, Piping Fee Included | $ 39.00 |
| **Permit Fees-Engineering** | 26-5 | Sidewalk and Approach Permit | $ 42.00 |
| | | Excavation Permit | $ 28.00 |
| | | Curb Cut Permit / LFT | $ 13.00 |
| | | Storm Sewer Tap Inspection (2) | $ 236.00 |
| | | Sanitary Wye Connection | $ 482.00 |
| | | Grade Stakes | Time and Material |
| | | Pavement Break: (Per Sq. Ft. Area) Add additional $100.00 for Major Roads | |
| | | 0-16 | $ 828.00 |
| | | 17-49 | $ 1,243.00 |
| | | 50-81 | $ 1,656.00 |
| | | 82-100 | $ 2,208.00 |
| | | 101-144 | $ 2,611.00 |
| | | 145 and over | $ 3,036.00 |
| **Mechanical Fees-Incinerators** | 26-5 | Incinerators | $ 57.00 |
| **Mechanical Fees-Inspections** | 26-5 | Hourly Rate | $ 200.00 |
| **Mechanical Fees-Re-Inspections** | 26-5 | Re-inspections or Final Inspection | $ 140.00 |
| **Mechanical Fees-Special Inspection** | 26-5 | Special Inspection Pertaining to Sale of Bldg | $ 200.00 |
| **Mechanical Fees-Insurance** | 26-5 | Insurance Inspections | $ 200.00 |
| **Mechanical Fees-Overtime** | 26-5 | Overtime Inspection: 1st hour | $ 300.00 |
| | | Overtime Inspection: each additional hour | $ 150.00 |
| **Mechanical Fees-Equipment** | 26-5 | Inspected equipment…supplemental permit…minimum | $ 140.00 |
| **Mechanical Fees-Refunds** | 26-5 | Refunds/Transfers | $ 75.00 |

## City of Flint
## Master Fee Schedule

| Division | CCO Ref | Service Name / Fee Type | Fee |
|---|---|---|---|
| **Mechanical Fees-Refrigeration** | 26-5 | Evaporator Coils under 5 h.p. (per cooler unit) | $ 60.00 |
| | | Evaporator Coils 5 h.p. & over (per cooler unit) | $ 84.00 |
| **Mechanical Fees-Compressor** | 26-5 | 15 h.p. to 50 h.p. (each compressor) | $ 84.00 |
| | | Over 50 h.p. (each compressor) | $ 114.00 |
| **Mechanical Fees-Chillers** | 26-5 | Each Chiller | $ 193.00 |
| **Mechanical Fees-Cooling Towers** | 26-5 | Each Cooling Tower | $ 110.00 |
| **Mechanical Fees-Duct System/Piping** | 26-5 | Duct System/Hydronic Piping, Gaseous Hydrogen, Fire Suppression/Protection System: | |
| | | Under $3,000 | $ 60.00 |
| | | $3,000 - $7,999 | $ 93.00 |
| | | $8,000 - $10,999 | $ 130.00 |
| | | $11,000 - $15,000 | $ 151.00 |
| | | Each additional $3,000 over $15,000 | $ 25.00 |
| **Mechanical Fees-Ventilation/Exhaust** | 26-5 | Fans under 1,500 cfm | $ 14.00 |
| | | 1,500 cfm to 10,000 cfm | $ 60.00 |
| | | Over 10,000 cfm | $ 114.00 |
| **Mechanical Fees-Heat Recovery** | 26-5 | Heat Recovery & Wall Fan Coils | $ 22.00 |
| **Mechanical Fees-Commercial Range** | 26-5 | Commercial Range Hoods | $ 57.00 |
| **Mechanical Fees- Other Hoods** | 26-5 | Other Specified Hoods | $ 51.00 |
| **Mechanical Fees-Barbecues** | 26-5 | Commercial Barbecues | $ 60.00 |
| **Mechanical Fees-Exhaust** | 26-5 | Power Exhaust/Plus Base Fee | $ 14.00 |
| **Mechanical Fees-Exhaust Fan** | 26-5 | Exhaust Fan (for Bathroom) | $ 14.00 |
| **Mechanical Fees-Flue/Vent Damper** | 26-5 | Flue Damper/Vent Damper Plus Base Fee | $ 14.00 |
| **Mechanical Fees-Humidifier** | 26-5 | Humidifiers/Plus Base Fee | $ 14.00 |

## City of Flint
## Master Fee Schedule

| Division | CCO Ref | Service Name / Fee Type | Fee |
|---|---|---|---|
| **Mechanical Fees- Air Cleaners** | 26-5 | Electronic Air Cleaner/Plus Base Fee | $ 14.00 |
| **Mechanical Fees- Condensate Pump** | 26-5 | Condensate Pumps/Plus Base Fee | $ 14.00 |
| **Mechanical Fees- Gas Piping** | 26-5 | New Installation, each outlet | $ 14.00 |
| **Mechanical Fees- Chimney** | 26-5 | Chimney, includes Breaching | $ 39.00 |
| **Plumbing Fees- Minimum** | 26-5 | Minimum Fee | $ 140 per inspection |
| | | Permit Base Fee | $ 75.00 |
| | | Water Heaters | $ 15.00 |
| | | Fixtures, each | $ 19.00 |
| | | Stacks, Vents | $ 28.00 |
| | | Reduced pressure zone backflow preventor (ea) | $ 19.00 |
| **Plumbing Fees- Water Distribution System** | 26-5 | Distance from meter: | |
| | | <1 inch | $ 54.00 |
| | | 1 inch | $ 84.00 |
| | | 2 inches | $ 126.00 |
| | | 3 inches | $ 168.00 |
| | | 4 inches | $ 213.00 |
| | | >4 inches | $ 273.00 |
| **Plumbing Fees- Sewer (Sanitary & Storm)** | 26-5 | Up to 150 ft lines: | |
| | | 6 inches or less | $ 140.00 |
| | | 8 inches | $ 166.00 |
| | | 10 inches | $ 180.00 |
| | | 12 inches | $ 200.00 |
| | | 14 inches | $ 208.00 |
| | | 16 inches | $ 217.00 |
| | | 18 inches | $ 237.00 |
| | | Over 18 inches | $ 247.00 |
| | | Per foot over 150 feet | $ 1.00 |

## City of Flint
## Master Fee Schedule

| Division | CCO Ref | Service Name / Fee Type | Fee |
|---|---|---|---|
| Plumbing Fees-Sump Line | 26-5 | Sump line is special rate | $ 140.00 |
| Plumbing Fees-Residential Sewer | 26-5 | Residential sewer, repair only, no base fee | $ 140.00 |
| Plumbing Fees-Manhole | 26-5 | Manhole & Catch Basins | $ 43.00 |
| Plumbing Fees-Sewage Sumps | 26-5 | Sewage Sumps, Ejections | $ 20.00 |
| Plumbing Fees-Connections | 26-5 | Connection of building drains to building sewer | $ 24.00 |
| Plumbing Fees-Heat Recliner | 26-5 | For industrial/commercial water heater, no base fee | $ 140.00 |
| Plumbing Fees-Lawn Sprinkler | 26-5 | Lawn Sprinkler System, no base fee | $ 140.00 |
| Plumbing Fees-Water Softener | 26-5 | Water Softener & Water Conditioner, no base fee | $ 140.00 |
| Plumbing Fees | 26-5 | Medical Gas | $75 plus $7.50 per connection |
| Plumbing Fees-Inspection | 26-5 | Hourly Rate | $ 200.00 |
| Plumbing Fees-Re-inspection | 26-5 | Re-inspections or Final Inspection | $ 140.00 |
| Plumbing Fees- Special Inspection | 26-5 | Special Inspection Pertaining to Sale of Bldg | $ 200.00 |
| Plumbing Fees-Insurance | 26-5 | Insurance Inspections | $ 200.00 |
| Plumbing Fees-Overtime | 26-5 | Overtime Inspection: 1st hour | $ 300.00 |
| | | Overtime Inspection: each additional hour | $ 150.00 |
| Plumbing Fees-Equipment | 26-5 | Supplemental Permit, minimum | $ 140.00 |
| Plumbing Fees-Refund | 26-5 | Refunds/Transfers | $ 75.00 |
| Electrical Fees | 26-5 | Residential/Commercial: | |
| | | Minimum Fee | $ 140 per inspection |
| | | Permit Base Fee | |

**City of Flint**
**Master Fee Schedule**

| Division | CCO Ref | Service Name / Fee Type | Fee |
|---|---|---|---|
| **Electrical-Circuits** | 26-5 | First & Second (each) | $ 15.00 |
| | | Third & Over (each) | $ 12.00 |
| **Electrical-Service/Power** | 26-5 | Service for Light, Heat or Power: | |
| | | Up to 100 amp switch | $ 22.00 |
| | | Over 100 to 200 amp switch | $ 51.00 |
| | | Over 200 to 400 amp switch | $ 87.00 |
| | | Over 400 to 1,000 amp switch | $ 144.00 |
| | | Over 1,000 to 2,000 amp switch | $ 226.00 |
| | | Over 2,000 amp switch | $ 240.00 |
| **Electrical-Signs** | 26-5 | Each Sign | $ 22.00 |
| | | Each Additional Sign | $ 11.00 |
| **Electrical - Fixtures/Plugs** | 26-5 | Fixtures & Plugs, each | $ 3.00 |
| **Electrical-Power Units (hp)** | 26-5 | Over 1/4 hp to 1.0 hp | $ 26.00 |
| | | Over 1.0 hp to 10 hp | $ 63.00 |
| | | Over 10 hp to 20 hp | $ 77.00 |
| | | Over 20 hp to 30 hp | $ 87.00 |
| | | Over 30 hp to 40 hp | $ 102.00 |
| | | Over 40 hp to 50 hp | $ 114.00 |
| | | Over 50 hp to 75 hp | $ 150.00 |
| | | Over 75 hp to 100 hp | $ 177.00 |
| | | Over 100 hp 50 150 hp | $ 202.00 |
| | | Over 150 hp | $ 226.00 |
| **Electrical-Trailer Parks** | 26-5 | Per Site | $ 26.00 |
| **Electrical-Feeders** | 26-5 | Feeders, Mains, Bus Ducts 50 feet or fraction | $ 15.00 |

**City of Flint**
**Master Fee Schedule**

| Division | CCO Ref | Service Name / Fee Type | Fee |
|---|---|---|---|
| **Electrical Fees-Inspection** | 26-5 | Hourly Rate | $ 200.00 |
| **Electrical Fees-Re-inspection** | 26-5 | Re-inspections or Final Inspection | $ 140.00 |
| **Electrical Fees-Special Inspection** | 26-5 | Special Inspection Pertaining to Sale of Structure | $ 200.00 |
| **Electrical Insurance** | 26-5 | Insurance Inspections | $ 200.00 |
| **Electrical Fees-Overtime Inspections** | 26-5 | Per existing policy: | |
| | | Overtime Inspection: 1st hour | $ 300.00 |
| | | Overtime Inspection: each additional hour | $ 150.00 |
| **Electrical Fees-Supplemental** | 26-5 | Supplemental Permit, minimum fee | $ 140.00 |
| **Electrical Fees-Refunds/Transfers** | 26-5 | Minimum Fee | $ 75.00 |
| | | Hourly Rate, work already performed | $ 200.00 |
| **Building Inspections** | | Copies of Rental License | $ 9.00 |
| **Building Inspections** | | Copies of V/N | $ 9.00 |
| **Building Inspections** | | Copies, per sheet (over the counter) | $ 9.00 |
| **Street Fees** | 26-5 | Temprorary Street Closure - Special Events | |
| | | 1-25 Barricades | $ 25.00 |
| | | 26-50 Barricades | $ 50.00 |
| | | 51-75 Barricades | $ 75.00 |
| | | 76-100 | $ 100.00 |
| | | 100 Plus Barricades | $ 150.00 |
| **Consumer Pavement Break** | 26-5 | Concrete Driveways/Sidewalks (Sq. Ft.) | $ 7.00 |
| | | Asphalt Driveways (Sq. Ft.) | $ 12.00 |
| | | Saw Cutting (Lineal Ft.) | $ 5.00 |
| | | Concrete Streets (Sq. Ft.) | $ 17.00 |
| | | Concrete Streets (Majors)(Sq. Ft.) | $ 20.00 |
| | | Asphalt Streets (Sq. Ft.) | $ 15.00 |
| | | Asphalt Streets (Majors)(Sq. Ft.) | $ 17.00 |
| | | Concrete/Asphalt Streets (Sq. Ft.) | $ 16.00 |
| | | Concrete/Asphalt Streets (Majors)(Sq. Ft.) | $ 18.00 |
| | | Concrete Curb (Lineal Ft.) | $ 20.00 |

# City of Flint
## Master Fee Schedule

| Division | CCO Ref | Service Name / Fee Type | Fee |
|---|---|---|---|
| | | FIRE DEPARTMENT | |
| n/a | n/a | Fire Incident or Ambulance Run Report | $ 5.00 |
| n/a | n/a | Code enforcement - per hour | $ 70.00 |
| n/a | n/a | CPR Training, 1-19 people | $ 25.00 |
| n/a | n/a | CPR Training, 20+ people | $ 15.00 |
| n/a | n/a | Hazardous Materials Cleanup | $ 73.00 |
| n/a | n/a | Vehicle Fire Response | $ 500.00 |
| n/a | n/a | Consumers Energy Standby | $ 292.00 |
| n/a | n/a | False Alarm Response, 1st | $ - |
| n/a | n/a | False Alarm Response, 2nd | $ 100.00 |
| n/a | n/a | False Alarm Response, 3rd | $ 250.00 |
| n/a | n/a | False Alarm Response, 4th | $ 500.00 |
| n/a | n/a | False Alarm Response, 5th | $ 1,000.00 |
| n/a | n/a | Extrication | $ 565.00 |
| n/a | n/a | Candle Watch Fee | $ 70.00 |
| n/a | n/a | DHS Inspection | $ 139.00 |
| n/a | n/a | Fire Prev Insp - Assembly | $ 104.00 |
| n/a | n/a | Fire Prev Insp - Business | $ 125.00 |
| n/a | n/a | Fire Prev Insp - Education | $ 150.00 |
| n/a | n/a | Fire Prev Insp - Factory/Industry | $ 150.00 |
| n/a | n/a | Fire Prev Insp - High Hazard | $ 215.00 |
| n/a | n/a | Fire Prev Insp - Institutional | $ 215.00 |
| n/a | n/a | Fire Prev Insp - Mercantile | $ 215.00 |
| n/a | n/a | Fire Prev Insp - Mixed Use | $ 215.00 |
| n/a | n/a | Group Fire Prev Insp - Reinspections | $ 35.00 |
| n/a | n/a | Medical Asst. | $ 45.00 |
| n/a | n/a | Office Training Course | $ 90.00 |
| n/a | n/a | Structure Fires | $ 500.00 |
| n/a | n/a | Downed Power Line Security | $ 200.00 |
| n/a | n/a | Paramed Support for Private Amb. | $ 100.00 |
| n/a | n/a | Paramed Response for Vehicle Injury Accident | $ 100.00 |
| n/a | n/a | Classes - blood born pathogens, 1-19 | $ 9.00 |
| n/a | n/a | Classes - blood born pathogens, 20+ | $ 5.00 |
| n/a | n/a | EMS Classes | $ 1,975.00 |
| n/a | n/a | FF/EMT hourly rate | $ 60.00 |
| n/a | n/a | Sergeant hourly rate | $ 69.00 |

**City of Flint**
**Master Fee Schedule**

| Division | CCO Ref | Service Name / Fee Type | Fee |
|---|---|---|---|
| n/a | n/a | Lieutenant hourly rate | $ 69.00 |
| n/a | n/a | Captain hourly rate | $ 89.00 |
| n/a | n/a | Battalion Chief hourly rate | $ 93.00 |
| n/a | n/a | Fire Apparatus Operator hourly rate | $ 65.00 |
| **POLICE DEPARTMENT** | | | |
| Patrol | n/a | Preliminary Breath Test | $ 13.00 |
| Patrol | n/a | Prostitution Sting Fee (City Portion Only) | $ 675.00 |
| Patrol | n/a | False Alarm Response | $ 79.00 |
| Patrol | n/a | Drunk Driving OUID Arrest | $ 471.00 |
| Patrol | n/a | Drunk Driving OUID Arrest With Accident | $ 236.00 |
| Patrol | n/a | Drunk Driving Blood Test | $ 314.00 |
| Patrol | n/a | Drunk Driving SOS Hearing | $ 353.00 |
| Patrol | n/a | Drunk Driving Court Hearing | $ 353.00 |
| Patrol | n/a | Accident Fee (Non-Resident) | $ 236.00 |
| Patrol | n/a | Police Officer (Overtime) | $ 104.00 |
| Patrol | n/a | Sergeant (Overtime) | $ 131.00 |
| Patrol | n/a | Police Lieutenant (Overtime) | $ 146.00 |
| Records & Identification | n/a | Accident / Incident Reports | $ 13.00 |
| Records & Identification | n/a | Copies of Complaints | $ 13.00 |
| Records & Identification | n/a | Criminal Expungement | $ 100.00 |
| Records & Identification | n/a | Fingerprinting | $ 31.00 |
| Records & Identification | n/a | Notary Fee | $ 13.00 |
| Records & Identification | n/a | Sex Offender Registration (City Portion only) | $ 50.00 |
| **CITY CLERK** | | | |
| n/a | n/a | Alcohol Liquor Sales | $ 1,000.00 |
| n/a | n/a | Ambulance Company - per Vehicle | $ 150.00 |
| n/a | n/a | Ambulance Attendant New License | $ 60.00 |
| n/a | n/a | Ambulance Attendant - Renewal | $ 55.00 |
| n/a | n/a | Amusement Arcade | $ 407.00 |
| n/a | n/a | Amusement Ride Bond (cash) | $ 1,000.00 |
| n/a | n/a | Amusement Rides 1st Day | $ 190.00 |
| n/a | n/a | Amusement Rides Additional Day | $ 73.00 |
| n/a | n/a | Auctioneer (Daily <90 Days) | $ 40.00 |
| n/a | n/a | Auctioneer (Yearly) | $ 135.00 |
| n/a | n/a | Bowling Alleys | $ 300.00 |

**City of Flint**
**Master Fee Schedule**

| Division | CCO Ref | Service Name / Fee Type | Fee |
|---|---|---|---|
| n/a | n/a | Building Contractor | $ 200.00 |
| n/a | n/a | Bump Shop | $ 425.00 |
| n/a | n/a | Car Wash | $ 282.00 |
| n/a | n/a | Card Room 1st 3 Tables | $ 65.00 |
| n/a | n/a | Card Room Additional Tables | $ 65.00 |
| n/a | n/a | Christmas Tree Bond (cash) | $ 125.00 |
| n/a | n/a | Christmas Tree Sales | $ 196.00 |
| n/a | n/a | Cigarette Machines | $ 8.00 |
| n/a | n/a | Cigarette Machine Operator | $ 110.00 |
| n/a | n/a | Club | $ 466.00 |
| n/a | n/a | City Public Driver New | $ 66.00 |
| n/a | n/a | City Public Driver Renewal | $ 55.00 |
| n/a | n/a | Condom Machines | $ 7.00 |
| n/a | n/a | Dance Hall | $ 305.00 |
| n/a | n/a | Dance (Public/Teen) | $ 305.00 |
| n/a | n/a | Dance Permit (Liquor) | $ 347.00 |
| n/a | n/a | Extended Hours Permit | $ 335.00 |
| n/a | n/a | Fireworks Bond | $ 500.00 |
| n/a | n/a | Fireworks Sales Permit | $ 700.00 |
| n/a | n/a | Garage Sale (1st) | $ 12.00 |
| n/a | n/a | Garage Sale (2nd) | $ 5.00 |
| n/a | n/a | Gasoline Station (1st 2 Pumps) | $ 75.00 |
| n/a | n/a | Gasoline Station (additional pumps) | $ 10.00 |
| n/a | n/a | Going Out Of Business Sale (30 Days) | $ 100.00 |
| n/a | n/a | Hall For Hire | $ 250.00 |
| n/a | n/a | Hotel (1st 100 Rooms) | $ 208.00 |
| n/a | n/a | Hotel (each additional Room) | $ 7.00 |
| n/a | n/a | Ice Cream (Vehicle) | $ 200.00 |
| n/a | n/a | Ice Cream (Cart) | $ 88.00 |
| n/a | n/a | Initial Merchant | $ 400.00 |
| n/a | n/a | Initial Merchant (Renewal) | $ 200.00 |
| n/a | n/a | Junk Collector (per vehicle) | $ 183.00 |
| n/a | n/a | Junk (2nd hand) Dealer w/ Store | $ 500.00 |
| n/a | n/a | Junk Dealer Yard | $ 400.00 |
| n/a | n/a | Laundromat / Dry Cleaners | $ 300.00 |
| n/a | n/a | Mech Amusement Device Pinball/Video | $ 22.00 |

**City of Flint**
**Master Fee Schedule**

| Division | CCO Ref | Service Name / Fee Type | Fee | |
|---|---|---|---|---|
| n/a | n/a | Mech Device Operator | $ | 143.00 |
| n/a | n/a | Motor Vehicle For Hire | $ | 165.00 |
| n/a | n/a | Music Machine | $ | 33.00 |
| n/a | n/a | Parking Lot 11-25 Spaces | $ | 147.00 |
| n/a | n/a | Parking Lot 26-50 Spaces | $ | 147.00 |
| n/a | n/a | Parking Lot 51-100 Spaces | $ | 147.00 |
| n/a | n/a | Parking Lot 101-150 Spaces | $ | 147.00 |
| n/a | n/a | Parking Lot 151-250 Spaces | $ | 154.00 |
| n/a | n/a | Parking Lot 251-350 Spaces | $ | 164.00 |
| n/a | n/a | Parking Lot >350 Spaces | $ | 370.00 |
| n/a | n/a | Pawnbroker | $ | 400.00 |
| n/a | n/a | Peddler Processing Fee | $ | 15.00 |
| n/a | n/a | Peddler Yearly | $ | 191.00 |
| n/a | n/a | Peddler 6 Months | $ | 191.00 |
| n/a | n/a | Peddler 3 Months | $ | 191.00 |
| n/a | n/a | Peddler 1 Month | $ | 191.00 |
| n/a | n/a | Peddler Daily | $ | 191.00 |
| n/a | n/a | Peddler w/Vehicle | $ | 246.00 |
| n/a | n/a | Pool Room 1st 4 Tables | $ | 296.00 |
| n/a | n/a | Pool Room Additional Tables | $ | 112.00 |
| n/a | n/a | Precious Metal & Gem Dealer | $ | 229.00 |
| n/a | n/a | Second Hand Dealer | $ | 350.00 |
| n/a | n/a | Sidewalk Contractor | $ | 250.00 |
| n/a | n/a | Sign Hanger | $ | 200.00 |
| n/a | n/a | Skating Rink | $ | 279.00 |
| n/a | n/a | Snow Removal Vehicle | $ | 175.00 |
| n/a | n/a | Tag Day Permit Non-Profit | $ | 50.00 |
| n/a | n/a | Taxi Cab Company | $ | 150.00 |
| n/a | n/a | Taxi Cab Inspection By Police | $ | 29.00 |
| n/a | n/a | Theater (per seat, $300 max) | $ | 0.58 |
| n/a | n/a | Tree Service | $ | 109.00 |
| n/a | n/a | Use of Streets | $ | 242.00 |
| n/a | n/a | Vehicle For Hire | $ | 75.00 |
| n/a | n/a | Wrecker - First Vehicles | $ | 201.00 |
| n/a | n/a | Wrecker - Additional Vehicles | $ | 108.00 |
| n/a | n/a | Adult Entertainment Establishment | $ | 886.00 |

## City of Flint
## Master Fee Schedule

| Division | CCO Ref | Service Name / Fee Type | Fee |
|---|---|---|---|
| n/a | n/a | Copy of City Charter | $ 10.00 |
| n/a | n/a | City of Flint Code Book | $ 300.00 |
| n/a | n/a | Code Supplements | $ 33.00 |
| n/a | n/a | Voter Lists (per sheet) | $ 0.25 |
| n/a | n/a | Voter Labels (per page) | $ 0.50 |
| n/a | n/a | Voter Info On Disk | $ 140.00 |
| n/a | n/a | Precinct Guides | $ 12.00 |
| n/a | n/a | Ward Maps - Large | $ 15.00 |
| n/a | n/a | Ward Maps - Small (8x10) | $ 2.00 |
| n/a | n/a | Ward Maps - Small (11x17) | $ 5.00 |
| | | **ASSESSMENT OFFICE** | |
| n/a | n/a | Record Reproduction (non FOIA) | $ 3.00 |
| n/a | n/a | Tax Maps | $ 23.00 |
| n/a | n/a | Tax Maps (Full Set) | $ 1,590.00 |
| n/a | n/a | Research Hourly Rate (1 hr minimum) (non FOIA) | $ 91.00 |
| n/a | n/a | Level 1: Creating or Combining ≤ 2 Platted Parcels | $ 50.00 |
| n/a | n/a | Level 2: Creating or Combining 3-4 Platted Parcels | $ 100.00 |
| n/a | n/a | Level 3: Creating or Combining ≤ 4 Un-Platted Parcels w/Survey | $ 150.00 |
| n/a | n/a | Level 4: Creating or Combining > 4 Platted/Un-Platted Parcels w/Survey | $ 200.00 |
| | | **FINANCE & PAYROLL** | |
| n/a | n/a | Pension Verification Letter | $ 18.00 |
| n/a | n/a | Copies of Paychecks | $ 4.00 |
| n/a | n/a | Copies of Other (non-Paycheck) materials | $ 1.00 |
| n/a | n/a | Duplicate 1099s | $ 12.00 |
| n/a | n/a | Duplicate W2s | $ 12.00 |
| | | **LAW OFFICE** | |
| n/a | n/a | FOIA Copy Charge (1st page) | $ 1.00 |
| n/a | n/a | FOIA per page copy charge | $ 0.25 |
| n/a | n/a | Research Hourly Rate (Non FOIA) | $ 70.00 |
| n/a | n/a | Sundry Revenues | $ 287.00 |
| n/a | n/a | FOIA Labor Rates | $ 15.66 |

**City of Flint**
**Master Fee Schedule**

| Division | CCO Ref | Service Name / Fee Type | Fee |
|---|---|---|---|
| n/a | n/a | Notary | $ 10.00 |
| RISK & BENEFIT MANAGEMENT | | | |
| n/a | n/a | Insurance Form Completion | $ 20.00 |
| n/a | n/a | Mailing Fee | $ 3.50 |
| n/a | n/a | Insurance Fee for Auto Accidents Involving City Property | $ 45.00 |
| n/a | n/a | Copying Charges (first 10 pages) non FOIA | $ 13.00 |
| n/a | n/a | Copying Charges (additional pages) non FOIA | $ 0.25 |
| TREASURER | | | |
| n/a | n/a | Deed Certification | $ 4.50 |
| n/a | n/a | Research Fee (non FOIA) | $ 53.00 |
| n/a | n/a | Photocopies (first copy) | $ - |
| n/a | n/a | Photocopies (additional - if same page only) | $ - |
| n/a | n/a | Income Tax Admin Review Fee | $ 28.00 |
| n/a | n/a | School District Summer Tax Levy (GISD) | $ 10,000.00 |
| n/a | n/a | School District Summer Tax Levy (Other Districts) | $ 250.00 |
| n/a | n/a | Bounced Check Fee | $ 50.00 |
| n/a | n/a | Waste Collection Fee Residential Dwelling | Per Unit $143.00 |
| n/a | n/a | Waste Collection Fee Multi-family Dwelling (up to 4 units) | Per Unit $143.00 |
| PLANNING & ZONING | | | |
| n/a | n/a | Site Plan Review: Resid 3+ houses | $ 1,002.00 |
| n/a | n/a | Site Plan Review: Comm/Ind | $ 1,002.00 |
| n/a | n/a | PUD or Mixed Use Dvl: Preliminary | $ 1,002.00 |
| n/a | n/a | PUD or Mixed Use Dvl: Final | $ 626.00 |
| n/a | n/a | Revisions / Review | $ 501.00 |
| n/a | n/a | Special Approval / Conditional Use | $ 1,002.00 |
| n/a | n/a | Street or Alley Vacations | $ 1,002.00 |
| n/a | n/a | Street Name Change | $ 1,002.00 |
| n/a | n/a | Zoning Appeal/Variances/Interp: Comm. | $ 1,002.00 |
| n/a | n/a | Zoning Appeal/Variances/Interp: Resid. | $ 626.00 |
| n/a | n/a | Copies of Master Plan/ Zoning Ord/ Maps | $ 22.00 |
| n/a | n/a | Zoning Change | $ 1,253.00 |
| n/a | n/a | Zoning Certificate: Per Hour | $ 125.00 |
| n/a | n/a | Zoning- Written Confirmation, per parcel | $ 125.00 |
| n/a | n/a | Zoning Lots: Resid prin parcel+1 parcel | $ 188.00 |

**City of Flint**
**Master Fee Schedule**

| Division | CCO Ref | Service Name / Fee Type | Fee |
|---|---|---|---|
| n/a | n/a | Zoning Lots: Resid: each add'l parcel | $ 251.00 |
| n/a | n/a | Zoning Lots: Comm. prin parcel+1 parcel | $ 251.00 |
| n/a | n/a | Zoning Lots: Comm.: each add'l parcel | $ 376.00 |
| n/a | n/a | Real Property Disp. Fee: Resid. Side Lot | $ 501.00 |
| n/a | n/a | Real Property Disp. Fee: Resid Non Side | $ 501.00 |
| n/a | n/a | Real Property Disp. Fee: Comm/ Ind. | $ 1,002.00 |
| n/a | n/a | Master Plan Update Surcharge | $ - |
| n/a | n/a | Zoning Review of Bldg Permit | $ 31.00 |
| | | PARKS & RECREATION | |
| n/a | n/a | Atwood Stadium - Reservation | $ 25.00 |
| n/a | n/a | Atwood Stadium - Rental | $ 750.00 |
| n/a | n/a | Atwood Stadium - Deposit | $ 250.00 |
| n/a | n/a | Atwood Stadium - Concessions | $ 50.00 |
| n/a | n/a | Atwood Stadium - Lights | $ 100.00 |
| n/a | n/a | Atwood Stadium - (1) Locker Room | $ 50.00 |
| n/a | n/a | Atwood Stadium - (2) Locker Rooms | $ 75.00 |
| n/a | n/a | Atwood Stadium - Press Box | $ 60.00 |
| n/a | n/a | Atwood Stadium - City Staff | $ 85.00 |
| n/a | n/a | Day Camps | $ 25.00 |
| n/a | n/a | Kearsley Park | $ 100.00 |
| n/a | n/a | Kearsley Park | $ 50.00 |
| n/a | n/a | Max Brandon Park | $ 50.00 |
| n/a | n/a | Max Brandon Park | $ 50.00 |
| n/a | n/a | All Other Parks | $ 35.00 |
| n/a | n/a | All Other Parks | $ 35.00 |
| n/a | n/a | Snowmobile | $ 650.00 |
| n/a | n/a | Snowmobile | $ 200.00 |
| | | WATER SERVICE CENTER | |
| n/a | n/a | Labor Rate | $ 50.00 |
| n/a | n/a | Meter Test Requested by Customer | $ 50.00 |
| n/a | n/a | Lost or Stolen Meter Charge | Cost of Meter + $50.00 |
| n/a | n/a | Affidavit Filing | $ 25.00 |
| n/a | n/a | Water Service Turn On or Off: Regular | $ 50.00 |
| n/a | n/a | **Water Service Turn Off: Emergency: Shop** | $ 100.00 |
| n/a | n/a | Water Service Turn-Off: Non Payment | $ 75.00 |
| n/a | n/a | Water Service Turn-On: Non Payment Same Day | $ 100.00 |

# City of Flint
## Master Fee Schedule

| Division | CCO Ref | Service Name / Fee Type | Fee |
|---|---|---|---|
| n/a | n/a | Water Service Turn-On: Non Payment Next Day | $ 75.00 |
| n/a | n/a | **Water Service Turn On or Off: Regular: Shop** | $ 65.00 |
| n/a | n/a | Frozen Meter Charge | Cost of Meter + $50.00 |
| n/a | n/a | Hydrant Meter Charge 5/8" | Deposit + $50 install fee + $50 removal fee + Cost of Water |
| n/a | n/a | Hydrant Meter Charge 1" | |
| n/a | n/a | Hydrant Meter Charge 1½" | |
| n/a | n/a | Hydrant Meter Charge 2" | |
| n/a | n/a | Hydrant Meter Charge 3" | |
| n/a | n/a | No Show Appointment | $ 50.00 |
| n/a | n/a | Thaw Frozen Lines | $ 325.00 |
| n/a | n/a | Cut & Plug 2" Water | $ 506.00 |
| n/a | n/a | Main Taps & Tie Ins | T&M |
| n/a | n/a | New Service Main Inspection | T&M |
| n/a | n/a | Seasonal Meter Installation or Removal | $ 50.00 |
| n/a | n/a | Cut & Plug 3" Water 12" Sewer | T&M |
| n/a | n/a | Riser Repair 3/4" Water | $ 126.00 |
| n/a | n/a | Riser Repair 1" Water | $ 126.00 |
| n/a | n/a | Riser Repair 1.5" | T&M |
| n/a | n/a | Riser Repair 2.0" | T&M |
| n/a | n/a | Check and Waste Repair 3/4" | $ 126.00 |
| n/a | n/a | Check and Waste Repair 1" | $ 126.00 |
| n/a | n/a | Check and Waste Repair 1.5" | T&M |
| n/a | n/a | Check and Waste Repair 2.0" | T&M |
| n/a | n/a | Bacteriological Sample Test Non Customers | $ 72.00 |
| n/a | n/a | Make sure off meter room found on-turned off & stuffed curb box | $ 75.00 |
| | | **Blow Out for Turn On from MSO Stuffed Curb Box: Shop** | $ 90.00 |
| n/a | n/a | Make sure off shop stuffed | $ 90.00 |
| n/a | n/a | Excavation for Turn-On from Non-Pay Turn-off | T&M $250 per hour |
| n/a | n/a | Bacteriological Sample Test Customers | No Fee |
| | | DCED | |

**City of Flint**
**Master Fee Schedule**

| Division | CCO Ref | Service Name / Fee Type | Fee |
|---|---|---|---|
| n/a | n/a | Brownfield Tax Credit Application - Fee calculated from total project investment and only assessed if the Flint Brownfield Redevelopment Authority approves the application. Application fee must be paid prior to bringing the Brownfield Plan before City Council for final approval. | |
| | | Less than $1 Million | $ 500.00 |
| | | $1 Million to $10 Million | $ 1,000.00 |
| | | $10 Million and Over | $ 2,000.00 |
| n/a | n/a | Tax Abatement Applications | $ 1,000.00 |
| n/a | n/a | Section 108 Loan Application | $ 2,000.00 |
| n/a | n/a | Specification Writing for Residential Rehabilitation | $ 300.00 |

# EXHIBIT B

**CITY OF FLINT**
**DEPARTMENT OF NEIGHBORHOOD SERVICES - DEVELOPMENT DIVISION**
**877-247-0517**

## FAILED INSPECTION NOTICE

Printed: 03/02/2016

**KARTER LANDON**
**P O BOX 190145**
**BURTON, MI 48519**

RE: **2022 KENTUCKY AVE** Property Parcel # **41-08-253-012**

Dear **KARTER LANDON**

This letter is to inform you that your property at **2022 KENTUCKY AVE** failed the rental inspection on 01/28/2016

A re-inspection has been scheduled for 04/01/2016 between **12:00PM and 4:30PM**. It is your responsibility to correct the following items as shown below.

***AREA: Basement***
***Misc Unsafe Equipment Unsafe equipment includes heating equipment, electrical wiring or device, flammable liquid containers or other equipment which is in disrepair or condition that such equipment is a hazard to life, health, property or safety of the public.***

***INSPECTOR COMMENTS: NO WATER UTILITY ACTIVATED IN UNIT DURING INSPECTION***

Please be advised that if the repairs are not completed by the re-inspection date shown above, additional fees may apply.

If you have any questions regarding your inspection or any fail items, please contact us by phone at **877-247-0517** for further information. Please contact our office to request a reasonable extension if circumstances beyond the owner / property manager control prevent the completion of repairs by the re-inspection date shown above. Possible reasons for extension may include, but are not limited to, adverse weather conditions for exterior items and manufacturer delivery delay for necessary parts to make repairs. A good faith effort must be made to complete all repairs within by the re-inspection date.

Sincerely,

Ismaeel Dhul-Qarnayn
City of Flint
Residential Rental Inspections Program

RIGHT TO APPEAL – Any owner or person who is aggrieved with the ruling or decision of the inspector or enforcing officer, in any matter relative to the interpretation or enforcement of the provisions of the Flint

# CITY OF FLINT
## DEPARTMENT OF NEIGHBORHOOD SERVICES
## DEVELOPMENT DIVISION

**December 03, 2015**

**SECOND NOTICE**

**LANDON, KARTER R**
**PO BOX 190145**
**BURTON, MI 48519**

RE: **3235 WOODROW AVE** Property Parcel # **41-04-333-018**

Dear **LANDON, KARTER R**

We recently sent you correspondence indicating you are due to register and/or obtain a rental license and inspection on the above subject property located in the City of Flint. As of this date we have not had a reply nor have you complied by paying the required fees for registration and inspection.

Enclosed is an application for registration and inspection of your rental dwelling. Please complete the enclosed application and return it to this office along with the appropriate fee(s) no later than **12/13/2015.** Please be sure to provide adequate contact information.

An inspection date and time will be mailed to you within 14 days of the receipt of your payment. Once the appointment has been scheduled, you are responsible for making sure an interior inspection of the dwelling can be conducted.

If the property indicated above is now owner occupied, please complete the *Non-Rental Affidavit* and return it to the City of Flint Development Division.

Our attempts to reach you regarding your rental property have failed and therefore you are in violation of **Ordinance #3707. This notice is to inform you that you have until the due date indicated above to comply with Ordinance #3707 by registering the property as a rental and paying all the fees which are due. Failure to comply with Ordinance #3707 will cause to you to be issued a Civil Infraction to appear in 68th District Court. Please be aware that court costs and fines can be assessed daily for all days in non-compliance.**

If you have any questions, you may contact our office at (877) 247-0517 between the hours of 9am and 5pm. Thank you for your continued support of the City of Flint and we look forward to working with you in the near future.

---

City of Flint
Residential Rental Inspections Program

RIGHT TO APPEAL – Any owner or person who is aggrieved with the ruling or decision of the inspector or enforcing officer, in any matter relative to the interpretation or enforcement of the provisions of the Flint City Code, may file with the Building and Safety Inspection division a "Notice of Appeal" specifying the grounds thereof. A fee shall be required before an appeal will be considered.

106.3 Prosecution of violation
Any person failing to comply with a notice of violation or order served in accordance with Section 107 shall be deemed guilty of a misdemeanor or civil infraction as determined by the local municipality, and the violation shall be deemed a strict liability offense. If the notice of violation is not complied with, the code official shall institute the appropriate proceeding at law or in equity to restrain, correct or abate such violation, or to require the removal or termination of the unlawful occupancy of the structure in violation of the provisions of this code or of the order or direction made pursuant thereto. Any action taken by the authority having jurisdiction on such premises shall be charged against the real estate upon which the structure is located and shall be a lien upon such real estate.

Inspector: Ismaeel Dhul-Qarnayn

# EXHIBIT C

# PRE-INSPECTION CHECKLIST FOR CERTIFICATE OF COMPLIANCE RENTAL INSPECTION

STRUCTURAL & MAINTENANCE (Interior/Exterior)

{ } Chimney: Check for deteriorating or crumbling tops; missing or deteriorated mortar joints; screen cover (1/2" galvanized mesh to extend at least 6" above flue liner).

{ } Roof: Check for leaks, missing or curled shingles and/or small holes that allow the wood to rot underneath causing a structural hazard.

{ } Gutters: Check that gutter is not sagging or pulling away from fascia board; galvanized type must be painted to retard rust, and that gutters & downspouts do not contain holes or leaking joints.

{ } Entrance porches & dust porches: (a) Wood – check for any structural problems, deteriorated decking, deteriorated or missing railing, unpainted wood steps which would permit rot or heaving. (b) Concrete and/or brickwork – Check for any structural or other significant cracks requiring tuck pointing or repair, excessive settlement, spalling, or tipping affecting safety.

{ } Paint: Check for excessive peeling, blistering or flaking. These areas would require scraping and painting. Permeable wood (beams, doors, etc.) if deteriorated, require treatment with a preservative.

{ } Debris: Check for debris in walkway, basement & attic, garages & yards, & particularly fire hazards adjacent to furnaces & water heaters & under stairwells.

{ } Vermin: Check garage, auxiliary buildings for rat/rodent evidence. Check house foundation if no basement. Rat proofing required for all structures.

{ } Stairways: Check for rotted wood or inadequate structural conditions which could render stairs unsafe under heavy loads.

{ } Handrails: Check for handrails to ensure they are adequately secured & structurally safe.

{ } Windows: Check for rotted wood, broken or cracked glass & proper operation. Screens required.

{ } Doors: Check for loose hardware, broken doors, cracked glass & peeling paint. The garage door should be in safe & satisfactory working condition. Check that exposed wood doors are properly preserved.

{ } Walls/Ceilings: Check for excessive peeling or flaking, cracked or deteriorated plaster (normal hairline cracks are excluded), holes in same. Repairs are limited to areas involved.

{ } Floors: Check wood, tile & lindleum floors for sections that are rotted, missing, broken or loose. Check sagging floors when possible to determine if joists require additional bracing or support for safety.

{ } Structures & Basement: Check basement walls for evidence of foundation failure. Note on Report.

{ } Fences: All fences should be maintained structurally sound and in good repair.

{ } Circuits: Check for improper splices & over-fusing.

{ } Service: Check for general condition of main service cables & equipment.

{ } Extension Cords: Any and all extension cords attached to walls that are used instead of permanent wiring shall be eliminated. Extension cords under carpeting and from one room to another or through walls or ceilings shall be eliminated.

{ } System Wiring: Check for illegal extensions to the wiring system in order to provide light, heat or power.

{ } Illumination: Check for operable light fixtures in kitchen, laundry, bathrooms, toilet rooms, hallways, stairways, furnace rooms, basement areas. Pendant cord fixtures will be replaced with keyless or pull-on type. Shower room fixtures shall be approved for wet location.

{ } Wall Switching: Check for switch control of lighting fixtures in kitchen, bathroom, hallways, stairways where insufficient lighting constitutes a hazard. One switch control light fixture or receptacle required.

PRE-INSPECTION CHECK LIST
(cont.)

{ } Receptacle Outlet: General requirements are two wall outlets in each habitable room, three in the kitchen, one in the bathroom and one in the laundry. Make sure that ground wires are connected in grounded receptacle.
{ } Fixtures: Check for broken or malfunctioning fixtures and improper connections.
{ } Water Lines: Check for evidence of any existing leakage.
{ } Fixture Venting: Check to see all fixtures requiring venting are properly vented. Where vent stacks go through roof, check for tightness of seal.
{ } Water Heater: Check vent pipe for no sag and right connection to chimney (sheet metal screws must be on all joints of vent pipes). Check that temperature pressure relief valve is an approved type and drip leg is present. A gas shut off valve must be located at heater.
{ } Sprinkler System/Hose Connections: Check for vacuum breaker to prevent backflow from lawn system and hose connections into domestic water supply.
{ } Smoke Alarm: One detector in each bedroom, one detector in common areas of bedrooms, and one detector on each floor, including basement.

HEATING

{ } Chimney Clean-Out: Check to see that there is proper clean out and right fitting operable clean out door, no unplugged openings in chimney.
{ } Vent Connector: On furnace, check for no sag and tight sealed connections to chimney, sheet metal screws must be on all joints of vent pipes.
{ } Leaks: Check for leaks in steam and hot water heating systems.
{ } Controls: In general, furnace and heating controls cannot be checked for proper operation under normal operating conditions. Inspections are usually limited to visual observation of general condition.

PLUMBING

{ } Sealing & Caulking: Check sealing & caulking around bathtub, walls & junctions at floor, and trim on faucet, at the floor of toilet bowl and near sink at wall tile.
{ } Traps: Check for all traps at each sink.
{ } Pipes & Drains: Check for deteriorated water pipes and drains.
{ } General: Make sure all fixtures are cleanable and functioning in a proper manner.

*The above guidelines are intended to be a general summary. Specific defects applicable to individual dwelling or other structures on said premises may be enlarged upon by the inspector in his report, which is available to parties involved in the transaction. Some items are impracticable to inspect, e.g., interior of furnaces, hot water tanks, footings etc.*

THE CERTIFICATE OF COMPLIANCE, THE INSPECTIONS CHECK LIST, THE INSPECTION REPORT, OR ANY OTHER DOCUMENTS ISSUED BY THE CITY OF FLINT DOES NOT CONSTITUTE ANY REPRESENTATION OR WARRANTY AS TO THE CONDITIONS OF THE DWELLING OR OTHER STRUCTURES ON SAID PREMISES DESCRIBED THEREIN OR ANY ASPECT OF SUCH CONDITION). INTERESTED PERSONS ARE ADVISED AND ENCOURAGED TO MAKE THEIR OWN INSPECTION OF THE PREMISES IN ORDER TO DETERMINE THE CONDITION THEREOF.

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| JAMES RONALD BAKER, et al., | : | Case No. 1:14cv512 |
| | : | |
| Plaintiffs, | : | Judge Susan J. Dlott |
| | : | |
| v. | : | AMENDED ORDER GRANTING |
| | : | PLAINTIFFS' MOTION FOR |
| CITY OF PORTSMOUTH, et al., | : | PARTIAL SUMMARY JUDGMENT |
| | : | (Doc. 26) AND GRANTING IN PART |
| Defendants. | : | AND DENYING IN PART |
| | : | DEFENDANTS' MOTION FOR |
| | | SUMMARY JUDGMENT (Doc. 20). |

Plaintiffs bring this action against Defendants under 42 U.S.C. § 1983, alleging violations of their rights to due process and from unconstitutional searches in connection with the City of Portsmouth, Ohio's rental code. Plaintiffs also bring a claim for unjust enrichment in an effort to recover inspection fees contributed to the City pursuant to the code. This matter is currently before the Court on Defendants' Motion for Summary Judgment (Doc. 20) and Plaintiffs' Motion for Partial Summary Judgment (Doc. 26).[1] For the reasons that follow the Court grants Plaintiffs' Motion for Partial Summary Judgment and grants in part and denies in part Defendants' Motion for Summary Judgment.

## I. BACKGROUND[2]

As an older city, much of the City of Portsmouth, Ohio's housing stock is aging. The median year for home construction in Portsmouth is 1948, seventeen years older than that for all of Ohio (1965) and twenty-seven years older than for the United States (1975). Following the

---

[1] The Southeastern Ohio Legal Services has also filed an amicus curiae response to the summary judgment of both parties. (Doc. 31.)

[2] Except as otherwise indicated, background facts are drawn from Defendants' Proposed Undisputed Facts (Doc. 20-2, at PageID 668–70.) Plaintiffs did not respond to Defendants' Proposed Undisputed Facts nor did they submit Proposed Undisputed Facts of their own.

2008 financial crisis, many single-family homes and rental properties in the city were foreclosed upon and/or abandoned. Many of these homes subsequently became rental properties—a portion of which sat vacant for extended periods of time. Although the City is unsure if the properties have been maintained or repaired to code standards, a majority of the complaints it has received regarding building code compliance matters relate to rental units. According to Christopher Smith, the City's Health Commissioner, many families are living in unsafe and unsanitary conditions, unaware of their legal rights regarding housing conditions and/or afraid to complain about such conditions.

In 2012, the Portsmouth adopted its Rental Dwelling Code (hereinafter the "RDC" or the "Code"). The stated scope and intent of the Code is as follows:

> This code is to protect the public health, safety and welfare of occupants in all rental dwellings as hereinafter provided by inspection and enforcement of the International Property Maintenance Code and the Codified Ordinances of the City of Portsmouth, fixing the responsibilities of owners, operators and occupants of all rental dwellings and providing for the administration of the Rental Dwelling Code.

§ 1361.01.

Under the Code, owners of rental properties within Portsmouth are required to apply to the Portsmouth Board of Health for a rental dwelling permit in order to rent their property. § 1361.09. The Code Enforcement Official is charged with issuing or denying the permits, which "shall be issued . . . if upon inspection of the rental dwelling it is determined that the rental dwelling meets the requirements of this code." *Id.* The City charges fees for issuing and renewing rental dwelling permits. §1361.13 (A). The annual license fees range from $50 for one unit to $480 for twelve units or more. *Id.*

Inspections are conducted at least once a year and on a minimum of forty-eight hours' notice, unless the time period is waived by the tenant or occupant. § 1361.02(A). Section 1361.02(D) of the Code also authorizes the Code Enforcement Official to make an inspection in response to a complaint or if the Official has a valid reason to believe that a violation of the provisions of the Code exists. The scope of the search is limited by the items on the dwelling inspection checklist, a list of eighty search items divided into the following categories: exterior premises, common egress corridor, interior, kitchen/dining, hallways, laundry, basement/mechanicals, bedrooms, bathrooms, and other. (*See* Doc. 20-1, at PageID 523.)

During the first year of the program, property owners were given approximately one year to correct non-critical failures identified in an inspection—those that did not pose an immediate danger to the health or safety of the tenant(s). A specified time period (indicated on the inspection sheet) was provided to correct any critical failures. If a follow-up inspection was required for a critical deficiency, the re-inspection date was also noted on the inspection form. Although no property owners were cited for violations for the rental inspection program, property owners who failed to respond to contacts from the City received a letter entitled "Failure to Schedule Mandatory Rental Inspection." (Doc. 1-1, Exhibit B at PageID 33.) The letter ordered the owner to contact the City Health Department to schedule a dwelling inspection. Failure to do so, the letter stated, "may result in an order to suspend the permit to operate and/or implement the procedures for **<u>Condemnation by the Board of Health</u>** under Section 1311.01 of the Codified Ordinances of the city of Portsmouth and possible issuance of misdemeanor citation." (*Id.*) (emphasis is original).

Plaintiffs are rental property owners in the City of Portsmouth, either directly or through their status as controlling members of the Limited Liability Companies that own the rental properties. On June 16, 2014, they filed the instant complaint against Defendants—the City of Portsmouth, Ohio; Christopher S. Smith, Portsmouth's Health Commissioner; and Andrew L. Gedeon, Portsmouth's Director of Environmental Health—arguing that the RDC violates their Fourth, Fifth, and Fourteenth Amendment rights. Specifically, in count one of the complaint, Plaintiffs claim that the Code violates their Fourth Amendment rights by mandating warrantless inspections of their properties without probable cause. Plaintiffs further allege that the Code violates their due process rights under the Fifth and Fourteenth Amendments because it requires Plaintiffs to forfeit their Fourth Amendment rights in order to rent out their property. Plaintiffs also challenge the RDC on Equal Protection grounds in count two of the complaint. According to Plaintiffs, the Code impermissibly applies only to single family rental dwellings and treats multi-unit rental dwellings differently than single-unit rental dwellings. Finally, in count three, Plaintiffs bring a state law claim of unjust enrichment, arguing that the City has collected and inequitably retained inspection and permitting fee assessments by virtue of the RDC.

Both parties now move for summary judgment. Defendants move for summary judgment on all counts of the complaint. Plaintiffs move for partial summary judgment on all claims other than the amount of damages, attorneys' fees, individual liability claims, and any claims regarding Defendants' new policies.[3]

## II. SUMMARY JUDGMENT STANDARD

[3] On July 28, 2014, the RDC was amended. Amongst other changes, the Code now includes a provision indicating that if the owner or occupant refuses to permit free access and entry, "the Health Commissioner or his authorized representative may petition and obtain an order or warrant to inspect from the Portsmouth Municipal Court or Scioto County Court of Common Pleas." § 1311.01. (Doc. 26-1, Ex. 2 at PageID 840.) Plaintiffs refrain from addressing Defendants' new policies in their motion, reserving the right to do so later. Accordingly, the Court expresses no opinion on the constitutionality of or any other claim pertaining to the revised ordinance in this Order.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All reasonable inferences from the record must be drawn in the light most favorable to the nonmoving party, and the court may grant summary judgment only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986). The moving party may support the motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). In responding to a summary judgment motion, the nonmoving party may not rest upon the pleadings but must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). The task of the Court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249.

## III. ANALYSIS

### A. Fourth Amendment

Plaintiffs and Defendants both move for summary judgment on Plaintiffs' claim that the RDC is unconstitutional under the Fourth Amendment. According to Plaintiffs, the Code is unconstitutional as applied and on its face, because it mandates warrantless, coerced inspections of the interior of private homes without probable cause. Defendants oppose Plaintiffs' motion and contend they are entitled to summary judgment, arguing that the RDC falls into the closely

regulated business and special needs exceptions to the Fourth Amendment's warrant requirement. For the reasons below, the Court finds Plaintiffs' position well-taken.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "The basic purpose of this Amendment . . . is to safeguard the privacy and security of individuals against arbitrary invasions by government officials." *Camara v. Mun. Court*, 387 U.S. 523, 527 (1967). The Supreme Court has repeatedly held that "searches conducted outside the judicial process, without prior approval by a judge or a magistrate judge, are *per se* unreasonable subject only to a few specifically established and well-delineated exceptions." *City of Los Angeles v. Patel*, __ U.S. __, 135 S.Ct. 2443, 2452 (2015). *See also Camara*, 387 U.S. at 528–29 (1967) (noting that "except in certain carefully defined classes of cases, a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant"). This rule, which applies to the states via the Fourteenth Amendment, is applicable to both commercial premises as well as private homes. *See Marshall v. Barlow's, Inc.*, 436 U.S. 311, 312 (1978).

In *Camara*, the Supreme Court held unconstitutional a San Francisco building ordinance which permitted warrantless, unconsented inspections to enforce the city's housing code. As in the instant case, failure to consent to the warrantless, administrative searches authorized by the ordinance was punishable as a misdemeanor. *Camara*, 387 U.S. at 527 n.2. The case arose after an apartment building tenant refused an annual inspection and was charged for failure to comply.

*Id.* After finding that the administrative searches constitute significant intrusions upon the interests protected by the Fourth Amendment, the *Camara* Court held "that such searches when authorized and conducted without a warrant procedure lack the traditional safeguards with the Fourth Amendment guarantees to the individual." *Id.* at 534. The Court reasoned:

> Under the present system, when the inspector demands entry, the occupant has no way of knowing whether enforcement of the municipal code involved requires inspection of his premises, no way of knowing the full limits of the inspector's power to search, and no way of knowing whether the inspector himself is acting under proper authorization. These are questions which may be reviewed by a neutral magistrate without any reassessment of the basic agency decision to canvass an area. Yet, only by refusing entry and risking a criminal conviction can the occupant at present challenge the inspector's decision to search. . . . The practical effect of this system is to leave the occupant subject to the discretion of the official in the field. This is precisely the discretion to invade private property which we have consistently circumscribed by a requirement that a disinterested party warrant the need to search. . . . We simply cannot say that the protections provided by the warrant procedure are not needed in this context; broad statutory safeguards are no substitute for individualized review, particularly when those safeguards may only be invoked at the risk of a criminal penalty.

*Id.* at 533. The Court found that the appellant (the apartment building tenant) had a constitutional right to insist that the administrative search be supported by a warrant and that he could not constitutionally be convicted for refusing to consent to the inspection. *Id.* at 540.

In *Sokolov v. Village of Freeport*, 420 N.E.2d 55 (N.Y. 1981), the Court of Appeals of New York applied the principles of *Camara* to a rental ordinance substantially similar to the Portsmouth RDC in this case. As here, the challenged ordinance required that landlords obtain a rental permit prior to leasing their property, which required an inspection of the rental property and a penalty for failure to comply—a fine of $250 was levied for each day a rental property was occupied without a permit. *Id.* at 343–44. The court held that the rental permit ordinance was unconstitutional "as it effectively authorizes and, indeed, requires a warrantless inspection of

residential rental property." *Id.* at 346. In reaching its holding, the court rejected the argument that because the ordinance punished renting without a permit, as opposed to the failure to consent to a search, any inspections under the ordinance was conducted with the consent of the owner. The court noted, "[a] property owner cannot be regarded as having voluntarily given his consent to a search where the price he must pay to enjoy his rights under the Constitution is the effective deprivation of any economic benefit from his rental property." *Id.*

The Ohio Supreme Court reached a similar conclusion in *Wilson v. City of Cincinnati*, 346 N.E.2d 666 (Ohio 1976). In that case, the court considered a challenge to a Cincinnati ordinance requiring that a property owner obtain a Certificate of Housing Inspection prior to entering into a contract for the sale of property. *Id.* at 670. Under the ordinance, the seller of the home could obtain a certificate only by agreeing to a search of the home and, with limited exception, failure to obtain a certificate prior to sale subjected the seller to criminal prosecution. *Id.* The Ohio Supreme Court found the ordinance unconstitutional, noting that "the import of *Camara* is that the Fourth Amendment prohibits placing appellant in a position where she must agree to a warrantless inspection of her property or face a criminal penalty." *Id.* at 671.

Finally, most recently in *City of Los Angeles v. Patel*, 135 S.Ct. 2443 (2015), the Supreme Court entertained a Fourth Amendment challenge to a city ordinance requiring hotel operators to provide hotel guest records to the police on demand. The ordinance contained no warrant provision, and failure to comply with the inspection was punishable as a misdemeanor. *Id.* at 2448. The Court found the administrative search regime facially unconstitutional because it penalized hotel owners for declining to produce their records without affording the opportunity for precompliance review. *Id.* at 2546. In doing so, the Court reaffirmed that "absent consent,

exigent circumstances, or the like, in order for an administrative search to be constitutional, the subject of the search must be afforded an opportunity to obtain precompliance review before a neutral decisionmaker." *Id.* at 2452. However, the Court held only that the hotel owner be afforded an *opportunity* to have a neutral decisionmaker review the search demand before being subject to penalties for failure to comply, noting that an actual review only need to take place when the hotel operator objects to the inspection.[4] *Id.* at 2453 (emphasis in original).

Guided by the above cases, the Court finds that the Portsmouth RDC violates the Fourth Amendment insofar as it authorizes warrantless administrative inspections. It is undisputed that the RDC affords no warrant procedure or other mechanism for precompliance review. As in the above cases, the owners and/or tenants of rental properties in Portsmouth are thus faced with the choice of consenting to the warrantless inspection or facing criminal charges, a result the Supreme Court has expressly disavowed under the Fourth Amendment. *See Camara*, 387 U.S. at 532. *See also Patel*, 135 S.Ct. at 2452 ("A hotel owner who refuses to give an officer access to his or her registry can be arrested on the spot. The Court has held that business owners cannot reasonably be put to this choice."). Therefore, unless a recognized exception to the warrant requirement applies, the Code's failure to include a warrant provision violates the Fourth Amendment.

Defendants contend that two exceptions apply, which the Court will consider in turn.

***i. Closely Related Business Exception***

[4] In line with *Patel*, lower courts have generally only upheld ordinances requiring advance consent to search when the government was required to obtain a warrant if the owner/occupant refused consent and the ordinance did not exact criminal penalties for lack of consent. *See Crook v. City of Madison*, 168 So.3d 930 (Mississippi 2015) (collecting cases); *Hometown Co-op. Apartments v. City of Hometown*, 515 F. Supp. 502, 503 (N.D. Ill. 1981) ("By providing for a warrant procedure in cases in which a new owner or lessee of property refuses to consent to an inspection by the building department, the City of Hometown has remedied the fatal flaw in its earlier point of sale inspection ordinance. The property owner is no longer forced to choose between consenting to a warrantless search or subjecting himself or herself to substantial fines for failure to procure a certificate of inspection.").

Defendants first contend that the closely regulated industry exception to the Fourth Amendment's warrant requirement applies. This exception—under which warrantless inspections of closely regulated business premises or industries may be reasonable—is premised on the observation that "[c]ertain industries have such a history of government oversight that no reasonable expectation of privacy could exist for a proprietor over the stock of such an enterprise." *Barlow's Inc.*, 436 U.S. at 313 (internal citations omitted). The Supreme Court has noted that the element that distinguishes such industries from ordinary business is "a long tradition of close government supervision, of which any person who chooses to enter such a business must already be aware." *Id.* In the past 45 years, the Supreme Court has only identified four industries as being closely regulated: liquor sales, firearms dealing, mining, and running an automobile junkyard. *See Patel,* 135 S.Ct. at 2454. The "clear import of [these cases] is that the closely regulated industry . . . is the exception." *Marshall*, 436 U.S. at 314. In *Patel*, for example, the Court indicated that simply listing the above closely regulated industries refuted the argument that hotels should be considered closely regulated, noting that unlike those industries "nothing inherent in the operation of hotels poses a clear and significant risk to the public welfare." *Patel*, 135 S.Ct. at 2454.

In this case, the Court similarly concludes that the rental of residential properties is not a closely regulated industry. *See Sokolov*, 52 N.Y.2d at 349 n.1 ("Nor may it be said that the business of residential rental is of such a nature that consent to a warrantless administrative search may be implied from the choice of the appellants to engage in this business."). Defendants point to several sections of the Ohio's landlord-tenant statute (Ohio Rev. Code, Chapter 5321), to the Servicemembers Civil Relief Act, 50 App. U.S.C.A. § et seq., and to the

Residential Lead-Based Pain Hazard Reduction Act of 1992, 42 U.S.C. § 4852d, in support of their claim that the rental business is closely regulated. However, these regulations do not "establish a comprehensive scheme of regulation" that distinguishes the residential rental business from numerous other businesses or industries. *Patel,* 135 U.S. at 2455. As the Supreme Court has warned, to classify the rental business as closely regulated "would permit what has always been a narrow exception to swallow the rule." *See id., Barlow's Inc.,* 436 U.S. at 313. Accordingly, the exception does not render the warrantless inspections authorized by the Code reasonable under the Fourth Amendment.

***ii. Special Needs Exception***

Defendants next contend that the Code is constitutional under the special needs exception. "[I]n limited circumstances, a search unsupported by either warrant or probable cause can be constitutional when 'special needs' other than the normal need for law enforcement provide sufficient justification." *Ferguson v. City of Charleston,* 532 U.S. 67, 76 n.7 (2001). The Supreme Court has observed that "special needs" are typically recognized only where the usual warrant or probable-cause requirements have somehow been rendered impracticable. *See Griffin v. Wisconsin,* 483 U.S. 868, 873 (1987). For example, the warrant requirement in the context of a public school, "would unduly interfere with the maintenance of the swift and informal disciplinary procedures that are needed, and strict adherence to the requirement that searches be based upon probable cause would undercut the substantial need of teachers and administrators for freedom to maintain order in schools." *Vernonia School Dist.*, 515 U.S. 652, 653 (1995) (quoting *Jersey v. T.L.O.*, 469 U.S. 325, 340, 341 (1985)) (internal quotation marks omitted). Similar reasoning has resulted in the special needs exception being applied in the

context of searches of a probationer's home, *Griffin*, 483 U.S. at 873; work-related searches of employees' desks and offices, *O'Connor v. Ortega*, 480 U.S.709, 721–25 (1987); drug tests of train operators, *Skinner v. Railway Labor Exec. Ass'n.*, 489 U.S. 602, 622–23 (1989); and body cavity searches of prison inmates, *Bell v. Wolfish*, 441 U.S. 558–60 (1979).

Defendants identify the special need in this case as the stated purpose of the rental permit and inspection program: "to protect the public health, safety and welfare of occupants in all rental dwellings." The only apparent basis for finding that the warrant requirement is impractical in this case is Defendant Christopher Smith, the Portsmouth Health Commissioner's assertion that a search warrant requirement would prevent the City from addressing interior building issues or other violations not visible from the public right away, unless the owner consented to an inspection or provided information sufficient to support a warrant. (Smith Affidavit, Doc. 20-1 at PageID 509.) Smith declares that because tenants are reluctant to report problems a warrant requirement would frustrate the purpose of the Code. (*Id.*)

In order to assess the reasonableness of the RDC inspections under the special needs exception, the Court balances three factors: (1) the nature of the privacy interest upon which the search intrudes, (2) the character of the intrusion complained of, and (3) the nature and immediacy of the governmental concern at issue and the efficacy of the Code for meeting it. *Vernonia*, 515 U.S. at 654, 658, 660.

In this case, the Court is satisfied that the warrantless inspections impact a substantial privacy interest, as "the sanctity of private dwellings [is] ordinarily afforded the most stringent Fourth Amendment protection." *United States v. Martinez-Fuerte*, 428 U.S. 543, 561 (1976). *Cf. California v. Ciraolo*, 476 U.S. 207, 226 (1986) (Powell, dissent) (describing the home as "an

area where privacy interests are most cherished in our society"); *U.S. v. Scott*, 450 F.3d 863, 871 (9th Cir. 2005) ("We are especially reluctant to indulge the claimed special need here because Scott's privacy interest in his home . . . is at its zenith."). Furthermore, unlike the cases in which the special needs exception has been applied, the expectation of privacy is not appreciably diminished here. *See*, *e.g.*, *Vernonia*, 515 U.S. at 657 (noting that students have a lesser expectation of privacy in the school environment); *Bell*, 411 U.S. at 557 (finding that a detainee had a diminished expectation of privacy). *See also Skinner*, 489 U.S. at 624 (noting that the special needs exception is applicable in "limited circumstances, *where the privacy interests implicated by the search are minimal*, and where an important governmental interest furthered by the intrusion would be placed in jeopardy by the requirement of individualized suspicion") (emphasis added). Defendants point to the Ohio landlord/tenant statute—in particular, the requirement that a tenant must admit the landlord onto the premises—as evidence that the subjects of the inspections have a diminished expectation of privacy. However, the Court is not persuaded that the statute meaningfully impacts the otherwise substantial privacy interest impacted by the inspections.

The inspections are also significantly intrusive. As the Supreme Court has noted, the "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *United States v. United States District Court*, 407 U.S. 297, 313 (1972). *See also Camara*, 387 U.S. at 539 ("administrative searches of the kind at issue here are significant intrusions upon the interests protected by the Fourth Amendment"). Although, as Defendants argue, the inspections are scheduled with advance notice and can be as brief as five minutes (Howard Depo., Doc. 17 at PageID 370), the inspections authorized by the RDC are extensive.

The search inspection sheet details eighty items to be inspected throughout the entirety of the rental property. The Court thus concludes that the intrusion is significant.

Finally, the Court considers the nature and immediacy of the governmental concern at issue and the efficacy of the Code for meeting it. The Court has no doubt that securing the public health, safety and welfare of Portsmouth's rental property occupants is a valid and important government concern. However, as noted above, special needs are generally only recognized when the ordinary Fourth Amendment requirements are impracticable. In addition, the Supreme Court precedents "establish that the proffered special need . . . must be substantial—important enough to override the individual's acknowledged privacy interest, sufficiently vital to suppress the Fourth Amendment's normal requirement[s]." *Chandler v. Miller*, 520 U.S. 305, 318 (1997).

In this case, it is not evident that Defendants could not fulfil the purpose of the RDC within the confines of a reasonable search warrant requirement or that the warrant requirement is otherwise impracticable in this context. The only evidence to suggest that a warrant requirement would interfere with the purpose of the Code is Health Commissioner Smith's assertion that the City would not be able to establish probable cause to conduct interior inspections with a warrant requirement. (*See* Smith Affidavit, Doc. 20-1 at PageID 509.)

However, the warrant requirement would not impose as onerous of a burden on Defendants as Smith's declaration suggests. In fact, in *Camara*, the Court specifically disagreed with the argument that "warrants should only issue when the inspector possesses probable cause to believe that a particular dwelling contains violations of the minimum standards prescribed by

the code being enforced." *Camera*, 387 U.S. at 534. Probable cause in the administrative search context requires a much lesser showing:

> Probable cause in the criminal law sense is not required. For the purposes of an administrative search . . . probable cause justifying the issuance of a warrant may be based not only on specific evidence of an existing violation but also on a showing that reasonable legislative or administrative standards for conducting an inspection are satisfied with respect to a particular establishment.

*Barlow's*, 436 U.S. at 320. Some of the administrative standards articulated as justifying an administrative inspection include "the passage of time, the nature of the building (*e.g.* a multi-family apartment house), or the condition of the entire area." *Camara*, 387 U.S. at 538. Defendants may obtain a warrant to inspect residences of owners who refuse consent to the administrative search based on these justifications. The evidence before the Court therefore provides no indication that departure from the Fourth Amendment's warrant requirement is necessary to fulfill the proffered special need. *See Chandler*, 520 U.S. at 318-319 (declining to find a special need where there is no indication of a "concrete danger demanding departure from the Fourth Amendment's main rule"). When balanced against the significant privacy interest and substantial intrusion thereon, the Court concludes that the warrantless inspections authorized by the Code are unreasonable under the Fourth Amendment.

Having determined that the Code is not saved by special needs or the closely regulated industry exceptions, the Court concludes that the Code's failure to include a warrant provision violates the Fourth Amendment. Therefore, as to the Fourth Amendment claim, Plaintiff's Motion for Partial Summary Judgment is GRANTED and Defendants' Motion for Summary Judgment DENIED.

**B. Equal Protection and Qualified Immunity**

Defendants move for summary judgment on Plaintiffs' Equal Protection and individual capacity claims against Defendants Smith and Gedeon. Plaintiffs have failed entirely to respond to Defendants' motion with regard to these claims. Plaintiffs have therefore abandoned the Equal Protection and individual capacity claims. *See Brown v. VHS of Mich.*, 545 Fed. App'x 368, 372 (6th Cir. 2013) ("This Court's jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment.") The Court therefore GRANTS Defendants' Motion for Summary Judgment as to Plaintiffs' Equal Protection claim and individual capacity claims against Defendants Smith and Gedeon.

**C. Unjust Enrichment**

Finally, the City of Portsmouth has moved for summary judgment on Plaintiffs' unjust enrichment claim on the basis that, as a political subdivision of the state, it is immune from liability. According to Plaintiffs, the City of Portsmouth inequitably acquired and retained inspection and permit fees from Plaintiffs,[5] which it used to fund unconstitutional inspections. Plaintiffs seek reimbursement for the amount paid in inspection fees related to the inspections.

Plaintiffs argue, and the Court agrees, that the unjust enrichment claim should survive the motion for summary judgment. Ohio Rev. Code Chapter 2744 grants broad immunity to political subdivisions such as the City. However, the "Ohio courts have uniformly held that while sovereign immunity bars tort claims for money damages, it has no application in actions for equitable relief." *Cincinnati v. Harrison*, No. C-130195, 2014 WL 2957946, at *7 (Ohio App. 1 June 30, 2014) (collecting cases). Historically, Ohio cases have "treated the prayer for

[5] According to the Complaint, Plaintiff Baker paid in excess of $1,300 in rental inspection fees in 2013, Plaintiff Howard has paid $900, Plaintiff Oliver paid in excess of $2,900, and Plaintiff Ross paid approximately $640 in December of 2012 and $640 in December of 2013. (Complaint, Doc. 1 at PageID 3.)

return of wrongfully collected funds as one seeking restitution; that is, a remedy that prevents the state from being unjustly enriched at the expense of the plaintiff." *Morning View Care Center v. Ohio Dept. of Job and Family Servs.*, No. 04AP-57, 2004 WL 2591237, at *5 (Ohio App. 10 Nov. 12, 2004). Although "restitution has been available both in equity and in law as the remedy for an unjust enrichment," *Santos v. Ohio Bur. Of Workers' Comp.*, 801 N.E.2d 441, 444 (Ohio 2004) (citing Restatement of the Law, Restitution (1937)), Ohio cases in which a plaintiff claims a state agency has wrongfully collected certain funds are characterized generally as claims for equitable restitution. *See e.g., Ohio Hospital Assoc. v. Ohio Dept. of Human Servs.*, 579 N.E.2d 695 (Ohio 1991) ("The reimbursement of monies withheld pursuant to an invalid administrative rule is equitable relief, not money damages, and is consequently not barred by sovereign immunity."); *Santos*, 801 N.E.2d at 446 ("A suit that seeks the return of specific funds wrongfully collected or held by the state is brought in equity.").

Based on the above case law, the Court concludes that Defendants' Motion for Summary Judgment should be denied with respect to Plaintiff's unjust enrichment claim. Plaintiffs seek relief in the form of the restitution of inspection fees related to unconstitutional inspections. Because Plaintiff seeks equitable relief the City is not entitled to immunity on the unjust enrichment claim and the Court will deny Defendants' motion on this claim.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Partial Summary Judgment (Doc. 26) is **GRANTED.** Defendants' Motion for Summary Judgment (Doc. 20) is **DENIED** with respect to Plaintiffs' Fourth Amendment and unjust enrichment claims. Defendants' Motion is

**GRANTED** with respect to Plaintiffs' Equal Protection claim and individual capacity claims against Defendants Smith and Gedeon.

**IT IS SO ORDERED.**

Susan J. Dlott

Judge Susan J. Dlott
United States District Court

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

County in which action arose ____________

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS** Karter Landon

**DEFENDANTS** City of Flint

(b) County of Residence of First Listed Plaintiff Genesee
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant Genesee
*(IN U.S. PLAINTIFF CASES ONLY)*

NO

(c) Attorneys *(Firm Name, Address, and Telephone Number)*

Att

Case: 4:16-cv-11061
Judge: Parker, Linda V.
MJ: Stafford, Elizabeth A.
Filed: 03-23-2016
CMP KARTER LANDON v CITY OF FLINT (dw)

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- X 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- X 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

Other:
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

440

**V. ORIGIN** *(Place an "X" in One Box Only)*

- X 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*: 28 U.S.C. § 1331 + 1343(a)(3)

Brief description of cause: Defendant forced entry into Plaintiff's property without a warrant.

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ To be Determined

CHECK YES only if demanded in complaint:
JURY DEMAND: X Yes ☐ No

**VIII. RELATED CASE(S) IF ANY** *(See instructions):* JUDGE ____________ DOCKET NUMBER ____________

DATE 3-11-16

SIGNATURE OF ATTORNEY OF RECORD [signature] Plaintiff

FOR OFFICE USE ONLY

RECEIPT # ________ AMOUNT ________ APPLYING IFP ________ JUDGE ________ MAG. JUDGE ________

# PURSUANT TO LOCAL RULE 83.11

1. Is this a case that has been previously dismissed?

☐ Yes
☒ No

If yes, give the following information:

Court: ______________________________

Case No.: ______________________________

Judge: ______________________________

2. Other than stated above, are there any pending or previously discontinued or dismissed companion cases in this or any other court, including state court? (Companion cases are matters in which it appears substantially similar evidence will be offered or the same or related parties are present and the cases arise out of the same transaction or occurrence.)

☐ Yes
☒ No

If yes, give the following information:

Court: ______________________________

Case No.: ______________________________

Judge: ______________________________

Notes :

# New Lawsuit Check List

**Instructions: Put a check mark in the box next to each appropriate entry to be sure you have all the required documents.**

| | | |
|---|---|---|
| ☒ | Two (2) completed **Civil Cover Sheets.** | Case: 4:16-cv-11061<br>Judge: Parker, Linda V.<br>MJ: Stafford, Elizabeth A.<br>Filed: 03-23-2016<br>CMP KARTER LANDON v CITY OF FLINT (dw) |
| ☒ | Enter the number of defendants named in your lawsuit in the blank below, add 2 and then enter the total in the blank.<br>1 (# of Defendants) + 2 = 3 (Total) **Complaints.**<br>Received by Clerk: ✓ Addresses are complete: ✓ | |
| ☐ | If any of your defendants are **government agencies**:<br>Provide two (2) extra copies of the **complaint** for the U.S. Attorney and the Attorney General. | |

| **If Paying The Filing Fee:** | | **If Asking That The Filing Fee Be Waived:** | |
|---|---|---|---|
| ☒ | Current new civil action filing fee is attached.<br>Fees may be paid by check or money order made out to:<br>*Clerk, U.S. District Court*<br>Received by Clerk: dw Receipt #: FL001692 | ☐ | Two (2) completed **Application to Proceed in District Court without Prepaying Fees or Costs** forms.<br>Received by Clerk: ______ |

**Select the Method of Service you will employ to notify your defendants:**

| **Service via Summons by Self** | | **Service by U.S. Marshal** (Only available if fee is waived) | | **Service via Waiver of Summons** (U.S. Government cannot be a defendant) | |
|---|---|---|---|---|---|
| ☑ | Two (2) completed **summonses** for each defendant including each defendant's name and address.<br>Received by Clerk: dw | ☐ | Two (2) completed **USM – 285 Forms** per defendant, if you are requesting the U.S. Marshal conduct service of your complaint. | ☐ | You need not submit any forms regarding the Waiver of Summons to the Clerk.<br>Once your case has been filed, or the Application to Proceed without Prepaying Fees and Costs has been granted, you will need:<br>• One (1) **Notice of a Lawsuit and Request to Waive Service of a Summons** form per defendant.<br>• Two (2) **Waiver of the Service of Summons** forms per defendant.<br>Send these forms along with your filed complaint and a self-addressed stamped envelope to each of your defendants. |
| | | ☐ | Two (2) completed **Request for Service by U.S. Marshal** form.<br>Received by Clerk: ______ | | |

**Clerk's Office Use Only**

Note any deficiencies here: