UNITED STATES DISTRICT COURT
EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

KARTER LANDON,

    Plaintiff,                                 Civil Action No: 16-11061
                                               Honorable Linda V. Parker
v.                                           Magistrate Judge Elizabeth A. Stafford

CITY OF FLINT,

    Defendant.
_____/

## REPORT AND RECOMMENDATION TO GRANT PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION [R. 18]

### I.   INTRODUCTION

Plaintiff Karter Landon, proceeding *pro se,* has filed a motion for temporary restraining order and preliminary injunction to enjoin Defendant City of Flint from penalizing him for refusing to consent to warrantless inspections of his vacant rental properties. [R. 18].[1] Since a temporary restraining order expires after at most 14 days,[2] and Landon is not seeking such time-limited relief, the Court treats his motion as one for preliminary injunction only. Having reviewed the briefs and held oral argument on

---

[1] The Honorable Linda V. Parker referred this matter for all pretrial proceedings pursuant to 28 U.S.C. § 636(b)(1)(A) and (B).
[2] *See* Federal Rule of Civil Procedure 65(b)(2).

November 16, 2016, the Court **RECOMMENDS** that Landon's motion for a preliminary injunction be **GRANTED**.

## II.     BACKGROUND

Flint's rules concerning the inspections of rental properties, and the consequences for not permitting such inspections, are set forth in a hodgepodge of separate regulations and ordinances.  Flint's Ordinance 3707 adopts the International Property Maintenance Code ("IPMC"), and states that it is to be enforced "together with" the Comprehensive Rental Inspection Code (hereinafter, "Inspection Code") and the Property Maintenance Code.  [R. 21-1, PgID 345].  Ordinance 3707 is only one paragraph long and adopts these codes by reference only.  [*Id.*]  And even though the IPMC contains "sample legislation for adoption of the International Property Maintenance Code," [*Id.,* PgID 395], Flint did not enact the recommended legislation; it simply adopted by reference in Ordinance 3707 the 2003 IMPC and any future iterations thereof. [*Id.*, PgID 345].  It is not clear whether Flint makes the IPMC easily available to its rental property owners, but Flint attached a copy of the 2012 IPMC to its responsive brief.  [*Id.,* PgID 345, 385 *et seq.*].

The 2012 IPMC's provision regarding right of entry provides, as relevant here, that when an inspection is necessary in order to enforce

provisions of the code, "the code official is authorized to enter the structure or premises at reasonable times to inspect or perform the duties imposed by this code, provided that if such structure of premises is occupied the code official shall present credentials to the occupant and request entry." [*Id.*, PgID 400]. If the premises are unoccupied, the code official is required to make reasonable efforts to locate the owner and request entry. [*Id.*]. "If entry is refused, the code official shall have recourse to remedies provided by law to secure entry." [*Id.*]. But the "remedies provided by law to secure entry" for routine rental property inspections are not spelled out in the IPMC or the other two codes referenced in Ordinance 3707.

Landon's amended complaint includes a version of the Inspection Code. [R. 16, PgID 220 *et seq.*]. But the version of the Inspection Code Flint submitted and represents as being the most current version has numerous modifications made by pen. [R. 21-1, PgID 347 *et seq.*]. The provisions regarding inspection of rental property, Section 902, are difficult to decipher because of the number of penned-in modifications. Nonetheless, it appears that the Inspection Code requires that a rental property owner secure a certificate of compliance after inspection of the premises by the enforcing agency. [*Id.*, PgID 349-50]. If a certificate of compliance is not secured, the premises cannot be occupied. [*Id.*, PgID

351]. Rental properties must be inspected every three years, and an enforcing official must request permission to enter the property during regular business hours. [*Id.*]. Once notified that an inspection is required, the owner must provide access to the rental property if the lease gives him or her a right of entry; must provide access to areas surrounding the rental property that are open to public view; and must use good-faith efforts to obtain permission for the inspection from the tenant. [*Id.,* PgID 352].

According to Flint's Property Maintenance Code, an enforcing official must obtain a warrant for an inspection when an owner demands one. [R. 21-1, PgID 364]. But Flint does not claim that this warrant requirement applies to the routine inspection of rental properties described in the Inspection Code. And as a factual matter, it does not appear that the Flint enforcing officials seek a warrant when attempting to enforce the Inspection Code.

Rather, the evidence shows that a property owner refusing an inspection is subject to civil infractions and denial of a certificate of compliance without the enforcing officials first obtaining a warrant or other process. By affidavit, Chief Building Official Jesse Buchanan states that Flint inspections do not go forward if permission is denied, and that Flint enforces violations through the municipal civil infraction process; he makes

4

no mention of seeking a warrant when inspections are refused.  [R. 21-2]. Further, in a letter dated December 3, 2015, from the Flint Department of Neighborhood Services, Landon was informed that he must complete an application for interior inspection of his rental dwelling, and that his failure to comply "will cause to [sic] you to be issued a Civil Infraction to appear in" a state district court.  [R. 16, PgID 256].  Landon was warned, "<u>Please be aware that court costs and fines can be assessed daily for all days in non-compliance.</u>"  [*Id.* (emphasis in original)]. The authority for these actions was vaguely identified as Ordinance 3707, without specific reference to any provision of the IPMC, the Inspection Code or the Property Management Code Landon.  [*Id.*].

Landon also provided a copy of an email exchange between him and Chief Building Official Buchanan from August of 2016 about a property that was occupied by a tenant.  [R. 27, PgID 514]. Landon informed Buchanan that the tenant was refusing entry for the inspection, and Buchanan responded with an unequivocal command: "You shall provide access.  If not you will force us to do enforcement procedures."  [*Id.*].

Of further note, during oral argument, the attorney representing Flint stated that violations of Ordinance 3707 or other codes are subject to its

general penalty of a fine of up to $500 and up to 90 days in jail.[3]  But although Landon claims that he has been threatened with a misdemeanor charge for not permitting inspections, the proof that Landon provided shows that the threatened charge related to his alleged improper removal of a water meter from a property. [R. 27, PgID 511].

In addition to complaining about facing possible civil and criminal penalties, Landon provides evidence that a certificate of compliance was withheld in 2015 because he refused entry for warrantless inspections. [R. 27, PgID 512-13].  He says that his sole source of income is threatened by Flint's Inspection Code.  Landon further challenges general Flint's authority to require full inspections of rental property and the fees that are associated with obtaining and renewing rental permits.

### III.   ANALYSIS

Landon appears to be putting forth both facial and as-applied challenges to Flint's routine inspection laws.  "A facial challenge to a law's constitutionality is an effort to invalidate the law in each of its applications, to take the law off the books completely." *Speet v. Schuette*, 726 F.3d 867, 872 (6th Cir. 2013) (citation and quotation marks omitted).  To succeed on

---

[3] *See* Flint Code of Ordinances, § 1-7.1, found at
http://library.amlegal.com/nxt/gateway.dll/Michigan/flint_mi/cityofflintmichigancodeofordinances?f=templates$fn=default.htm$3.0$vid=amlegal:flint_mi

a facial attack, Landon must establish that Flint's inspection scheme is invalid under all circumstances.  *Id.*   An as-applied challenge "argues that a law is unconstitutional as enforced against the plaintiffs before the court." *Id.* "[T]he distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings and disposition in every case involving a constitutional challenge." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331 (2010).

The Court must weigh four factors to determine whether injunctive relief is warranted: (1) whether the plaintiff has a strong likelihood of success on the merits; (2) whether the plaintiff would suffer irreparable harm without the requested relief; (3) whether issuance of the temporary restraining order or preliminary injunction would cause substantial harm to others; and (4) whether the requested relief would serve the public interest. *Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 760 (6th Cir. 2005).  These factors are meant to guide the resolution of the motion, but are not rigid prerequisites.  *Sandison v. Mich. High Sch. Athletic Assoc., Inc.*, 64 F.3d 1026, 1030 (6th Cir. 1995).  Having said that, "a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000).

Landon bears a heavy burden of demonstrating that he is entitled to injunctive relief. *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). "[T]he proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion." *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000); *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012).

### A. Likelihood of Success on the Merits

#### *1. Standing*

The Court required Landon and Flint to address whether he has standing to bring his constitutional challenge, and they filed supplemental briefs. [R. 26; R. 30; R. 31]. Landon must establish both Article III constitutional standing and prudential standing. In order to establish Article III standing,

> "a plaintiff must show: (1) it has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

*Wuliger v. Manufacturers Life Ins. Co.*, 567 F.3d 787, 793 (6th Cir. 2009) (citation and internal quotation marks omitted). The prudential standing requirements require that a plaintiff assert his own legal

8

rights and interests, that the claim not be a generalized grievance, and that the claim is within the "zone of interests" regulated by the law at issue. *Id.*

Generally, a landlord has no reasonable expectation of privacy in leased property, and thus no standing to challenge the constitutionality of a search of occupied property. *Shamaeizadeh v. Cunigan*, 338 F.3d 535, 545 (6th Cir. 2003). "If, however, the rental property is not occupied, the only logical person who would have standing and an expectation of privacy would be the owner of the property. The property owner therefore has not relinquished his standing or expectation of privacy in situations where the property is not occupied." *Dearmore v. City of Garland*, 400 F. Supp. 2d 894, 899-900 (N.D. Tex. 2005). In *Dearmore*, the plaintiff had standing arising out of his unoccupied property, but not out of property that was leased to tenants because he "does not have a reasonable expectation of privacy in residential property leased to a tenant, and he is not required to give consent for the tenant." *Id.* at 900.

Landon asserts that he owns approximately five rental properties in Flint that are not occupied. His proofs demonstrate that his properties are actually subject to the codes referenced in

9

Ordinance 3707, and that Flint has threatened him with penalties for failing to schedule inspections. Thus, Landon has demonstrated an actual, concrete injury that is personal to him and is traceable to Flint's rental property inspection laws. Further, unlike in *Dearmore,* Landon was ordered to consent to the search of property that was occupied by a tenant, or to face enforcement consequences. [R. 27, PgID 514]. Under these circumstances, Landon should be found to have standing.

### 2. Fourth Amendment

It is well-settled that routine warrantless inspections of rental properties implicate the Fourth Amendment. In *Camara v. Mun. Court of City & Cty. of San Francisco*, 387 U.S. 523 (1967), the plaintiff challenged the constitutionality of the city's administrative inspection law that penalized tenants who refused to permit warrantless administrative inspections of their residences. The plaintiff was arrested under this law for twice refusing to permit an inspection. *Id.* at 527.

The Court held that, although "a routine inspection of the physical condition of private property is a less hostile intrusion than the typical policeman's search for the fruits and instrumentalities of crime," and although the city had an interest in health and safety standards,

"administrative searches of the kind at issue here are significant intrusions upon the interests protected by the Fourth Amendment." *Id.* at 530-34. Nonetheless, a health official need not show the same level of proof as an investigator searching for proof of a crime. *Id.* at 538. In fact, when it comes to routine property inspections, "[t]he passage of a certain period without inspection might of itself be sufficient in a given situation to justify the issuance of warrant." *Id.* But there must be a "warrant procedure [that] is designed to guarantee that a decision to search private property is justified by a reasonable governmental interest." *Id.* at 539. Specifically, a neutral magistrate would review "whether enforcement of the municipal code involved requires inspection of his premises," "the lawful limits of the inspector's power to search," and "whether the inspector himself is acting under proper authorization." *Id.* at 532.

More recently, the Supreme Court recognized that there are circumstances under which a warrant process is impracticable, but even then, "absent consent, exigent circumstances, or the like, in order for an administrative search to be constitutional, the subject of the search must be afforded an opportunity to obtain precompliance review before a neutral decisionmaker." *City of Los Angeles, Calif. v. Patel*, 135 S. Ct. 2443, 2452 (2015). Without such precompliance review, an intolerable risk exists that

11

searches will exceed statutory limits or be used to create a pretext for harassment. *Id.* at 2452-53. Although the need for actual review by a neutral decisionmaker may be rare, the opportunity for such a review must be accorded before penalties are imposed. *Id.* at 2453.

In light of this precedent, another district court held that a rental dwelling code violated the Fourth Amendment because it contained "no warrant procedure or other mechanism for precompliance review." *Baker v. City of Portsmouth*, No. 1: 14CV5L2, 2015 WL 5822659, at *5 (S.D. Ohio Oct. 1, 2015). The same analysis applies here. Although the Property Maintenance Code states that warrants must be obtained if a property owner demands one, that language does not appear to apply to the routine inspections described in the Inspection Code.

Indeed, Flint does not argue that the warrant requirement described in the Property Maintenance Code applies to this case. Instead, citing *Patel*, it argues that a warrant requirement is impractical because Flint is too large, and that "this very case serves as an example of precompliance review." [R. 21, PgID 336-37]. This latter argument is absurd on its face and merits little analysis. The federal lawsuit that made its way to the Supreme Court in *Patel* was not identified as the type of precompliance review contemplated by that Court, and finding so would make no sense.

12

*Patel* described the precompliance review it contemplated as being less onerous than an "impracticable" warrant process; filing a federal lawsuit to challenge the constitutionality of an administrative search cannot be described as less onerous than a warrant process.

This case illustrates the need for a precompliance review process before a neutral decisionmaker. It is highly questionable whether Buchanan had the authority to threaten "enforcement" if Landon did not consent to a search of a property that is occupied by a tenant. [R. 27, PgID 514]. The Inspection Code only required Landon to make a good faith effort to secure the consent of the tenant, not to compel it, [R. 21-1, PgID 352], and it was the tenant who held the Fourth Amendment right to privacy within the rental property. *Shamaeizadeh*, 338 F.3d at 544-45.

For these reasons, Landon is likely to succeed on his claim that Flint's Inspection Code and other codes adopted within Ordinance 3707 violate the Fourth Amendment because they do not provide a warrant or precompliance review process for routine inspections. Alternatively, he is likely to succeed on his claim those codes as applied against him violate the Fourth Amendment.

**B. Other Preliminary Injunction Factors**

The remaining preliminary injunction factors are whether the plaintiff would suffer irreparable harm without the requested relief; whether issuance of the temporary restraining order or preliminary injunction would cause substantial harm to others; and whether the requested relief would serve the public interest. *Tumblebus*, 399 F.3d at 760. These factors weigh in favor of granting the preliminary injunction.

Landon has demonstrated that he will suffer irreparable harm without an injunction in that he has been threatened with civil infractions and deprivation of the productive use of his rental property for failing to comply with an inspection law that violates the Fourth Amendment. *See Columbia Basin Apartment Ass'n v. City of Pasco*, 268 F.3d 791, 798 (9th Cir. 2001) ("[T]he City's enforcement of the Pasco Ordinance may impermissibly threaten the landlords with a deprivation of property and civil penalties if they are unwilling to violate the Fourth Amendment rights of their tenants."); *Dearmore*, 400 F. Supp. 2d at 905-06 (plaintiff established substantial threat of immediate harm because he was subject to loss of rental permit and fines unless he agreed to warrantless inspection).

Flint argues that issuing an injunction would be against the public interest and would harm others because it would not be able to enforce its

Code, exposing potentially thousands of renters to housing that does not meet health and safety standards.  The Court disagrees, for two reasons.

First, "with minimal effort, [Flint] may amend its ordinance to include the owner's right of refusal of an inspection and include a warrant requirement upon that refusal."  *Dearmore*, 400 F.Supp.2d at 905. In *Dearmore*, the city council amended its ordinance and removed the constitutional infirmities less than two weeks after the district court granted a preliminary injunction.  *Dearmore v. City of Garland*, 519 F.3d 517, 520 (5th Cir. 2008).  And despite Flint's argument that a warrant process is impracticable for routine inspections, the showing necessary for securing such a warrant is not onerous; "[t]he passage of a certain period without inspection might of itself be sufficient in a given situation to justify the issuance of warrant."  *Camara,* 387 U.S. at 528

It is true that Landon has requested that the Court invalidate Flint's authority to require routine, full inspections of rental property and the fees that are associated with obtaining and renewing rental permits, but this request is not supported by the authority upon which he relies and should be rejected.  *Camara* recognized the public interest in the type of inspection program at issue, but noted that "[it] has nowhere been urged that fire, health, and housing code inspection programs could not achieve their goals

15

within the confines of a reasonable search warrant requirement." *Camara*, 387 U.S. at 533. In *Patel*, the Court likewise emphasized that nothing in its opinion called into question the regulation requiring hotel operators to maintain guest registries containing certain information; the issue was the ability of the police to arrest hotel owners who refused to allow access to such registries without precompliance review. *Patel,* 135 S.Ct. at 2452-54. A municipality has a well-established and legitimate interest in imposing regulations to protect its property values, aesthetics, and the health, safety and welfare of its residents. *Shoemaker v. City of Howell*, 795 F.3d 553, 567 (6th Cir. 2015) (collecting cases). Thus, Flint may cure the defect in its Inspection Code by adding a requirement for a warrant or other precompliance review process in the event that a request for routine inspection is refused.

Secondly, despite Flint's legitimate interest in regulating its rental market, the preliminary injunction is within the public interest, "as enjoining the enforcement of an unconstitutional provision of the Ordinance promotes rather than disserves the public interest." *Dearmore,* 400 F.Supp.2d at 905-06.

For these reasons, Flint's argument that enjoining the unconstitutional provisions of its Inspection Code would cause harm and be contrary to the

16

public interest should be rejected.

## IV. CONCLUSION

For the reasons stated above, Landon's motion for preliminary injunction [R. 18] should be **GRANTED**, and Flint should be enjoined from enforcing any provision Ordinance 3707 that requires a person to allow an inspection of the rental property as a condition of receiving a rental permit, or penalizes any person for refusing to allow an inspection, in the absence of a warrant or other precompliance review process by a neutral decisionmaker.

s/Elizabeth A. Stafford  
ELIZABETH A. STAFFORD  
United States Magistrate Judge

Dated: November 30, 2016

## NOTICE TO PARTIES REGARDING OBJECTIONS

The parties' attention is drawn to Fed. R. Civ. P. 72(a), which provides a period of fourteen (14) days from the date of receipt of a copy of this order within which to file objections for consideration by the district judge under 28 U.S. C. §636(b)(1). Unless ordered otherwise by the Court, the filing of an appeal to the District Judge does not stay the parties' obligations in this Order. *See* E.D. Mich. LR 72.2.

**CERTIFICATE OF SERVICE**

    The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 30, 2016.

                                      s/Marlena Williams
                                      MARLENA WILLIAMS
                                      Case Manager