UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KARTER LANDON,

    Plaintiff,

v.

CITY OF FLINT,

    Defendant.

_____/

Civil Action No: 16-11061
Honorable Linda V. Parker
Magistrate Judge Elizabeth A. Stafford

**REPORT AND RECOMMENDATION TO GRANT IN PART
AND DENY IN PART FLINT'S MOTION FOR SUMMARY JUDGMENT,
AND GRANT IN PART AND DENY IN PART PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT [ECF NOS. 43, 55]**

## I.    Introduction

Plaintiff Karter Landon, proceeding *pro se,* filed this action to challenge the policies and practices of Defendant City of Flint relating to its routine inspections of rental properties. Pending before the Court are Flint's motion for summary judgment and Landon's motion for partial summary judgment. [ECF Nos. 43, 55]. The Court recommends that Flint be granted summary judgment of Landon's equal protection claim, but that its motion otherwise be denied; and that Landon's request for a declaration that the version of Flint's inspection code that was in place at the time of the filing of the lawsuit was unconstitutional be granted, but that his motion

for partial summary judgment otherwise be denied.

II. Background

Flint's rules concerning the inspections of rental properties and the consequences for not permitting them were detailed in a report and recommendation (R&R) to grant Landon's motion for preliminary injunction. [ECF No. 37, PageID 592-96]. In that R&R, the Court found that Landon was likely to succeed on his claim that Flint's Inspection Code and other codes adopted by Ordinance 3707 violated the Fourth Amendment because they did not provide a warrant or other precompliance review process for routine inspections. [*Id.*, PageID 13].

Flint did not object to the analysis or conclusions set forth in the R&R; its objections argued that the preliminary injunction was moot due to subsequent events. [ECF No. 41]. Specifically, at a December 2016 city council meeting, the council amended Section 902.5(b) of its Comprehensive Rental Inspection Code to state, "In non-emergency situations, if permission to enter the rental property is denied, the enforcing agency shall seek an administrative search warrant before conducting the inspection." [ECF No. 41-5, PageID 744]. Under the same section, enforcing agents are allowed to enter the rental property at any time in an emergency, and the city council passed an emergency Ordinance 4081 at

the same December 2016 meeting declaring "an emergency affecting life, health, and property exists in that rental properties in the City of Flint must be inspected in order to ensure that they are safe and fit for habitation . . . ." [ECF No. 41-2, PageID 653]. The Honorable Linda V. Parker rejected Flint's objections, holding that it failed to meet its burden of demonstrating that the need for the preliminary injunction was moot. Judge Parker reasoned that there was insufficient evidence that the amendments to Section 902.5(b) and Ordinance 4081 were properly enacted and, even if they were, since Ordinance 4081 declared a general emergency with respect to rental properties, "Flint appears to be granting the enforcing agency continued authority to conduct warrantless inspections of the City's rental properties." [ECF No. 53, PageID 972-73].

Judge Parker thus granted the motion for preliminary injunction, and Flint then moved to dissolve the injunction, arguing that the amendment to Section 902.5(b) had subsequently been enacted effective January 11, 2017. [ECF No. 56-8, PageID 1077]. This Court entered an R&R finding that the preliminary injunction should not be dissolved because of Ordinance 4081 declaring the general emergency with respect to Flint's rental properties, and because Section 902.5(c) of the inspection code still required a landlord to provide access to the rental property upon being

3

notified that by the enforcing agency that an inspection is required. [ECF No. 58, PageID 1089-90]. In objections, Flint pointed out that Ordinance 4081 expired sixty-one days after enactment, and argued that the rules of statutory construction are such that an enforcing agency will only inform an owner that an inspection is required after the warrant requirement is met. [ECF No. 60, PageID 1177-80].

With this posture in mind, the Court will turn to the parties' arguments pertaining to their motions for summary judgment. In its motion, Flint argues that Landon's Fourth Amendment, unconstitutional conditions doctrine, equal protection and unjust enrichment claims fail, and that those claims are all moot. Landon asks in his motion for partial summary judgment that the Court declare that Flint's original Inspection Code policies were unconstitutional, and that Flint violated his Fourth, Fifth and Fourteenth Amendment rights when it coerced him into warrantless searches of his rental properties, leaving only the issues of damages and the constitutionality of Flint's new policies.

### III. Analysis

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party

seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). If the movant satisfies its burden, the burden shifts to the non-moving party to go beyond the pleadings and set forth specific facts showing a genuine issue for trial. *Celotex*, 477 U.S. at 324; *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001). In deciding a summary judgment motion, the Court must view the factual evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88(1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

**A.**

Landon asserts both facial and as-applied challenges to Flint's routine inspection laws that were in place when he filed his lawsuit. "A facial challenge to a law's constitutionality is an effort to invalidate the law in each of its applications, to take the law off the books completely." *Speet v. Schuette*, 726 F.3d 867, 872 (6th Cir. 2013) (citation and quotation marks omitted). To succeed on a facial attack, Landon must establish that

Flint's inspection scheme is invalid under all circumstances. *Id.* An as-applied challenge "argues that a law is unconstitutional as enforced against the plaintiffs before the court." *Id.* "[T]he distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings and disposition in every case involving a constitutional challenge." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331 (2010). For the same reasons set forth when recommending that Landon's motion for preliminary injunction be granted, Landon's request that the Court declare Flint's initial Inspection Code to be unconstitutional should be granted.

It is well-settled that routine warrantless inspections of rental properties implicate the Fourth Amendment. In *Camara v. Mun. Court of City & Cty. of San Francisco*, 387 U.S. 523 (1967), the Court held that, although "a routine inspection of the physical condition of private property is a less hostile intrusion than the typical policeman's search for the fruits and instrumentalities of crime," and although the city had an interest in health and safety standards, "administrative searches of the kind at issue here are significant intrusions upon the interests protected by the Fourth Amendment." *Id.* at 530-34. A health official need not show the same level of proof as an investigator searching for proof of a crime; when it comes to

routine property inspections, "[t]he passage of a certain period without inspection might of itself be sufficient in a given situation to justify the issuance of warrant." *Id.* at 538. But there must be a "warrant procedure [that] is designed to guarantee that a decision to search private property is justified by a reasonable governmental interest." *Id.* at 539. Specifically, a neutral magistrate should be available to review "whether enforcement of the municipal code involved requires inspection of his premises," "the lawful limits of the inspector's power to search," and "whether the inspector himself is acting under proper authorization." *Id.* at 532.

More recently, the Supreme Court recognized that there are circumstances under which a warrant process is impracticable, but even then, "absent consent, exigent circumstances, or the like, in order for an administrative search to be constitutional, the subject of the search must be afforded an opportunity to obtain precompliance review before a neutral decisionmaker." *City of Los Angeles, Calif. v. Patel*, 135 S. Ct. 2443, 2452 (2015). Without such precompliance review, an intolerable risk exists that searches will exceed statutory limits or be used to create a pretext for harassment. *Id.* at 2452-53. Although the need for actual review by a neutral decisionmaker may be rare, the opportunity for such a review must be accorded before penalties are imposed. *Id.* at 2453.

7

In light of this precedent, another district court held that a rental dwelling code violated the Fourth Amendment because it contained "no warrant procedure or other mechanism for precompliance review." *Baker v. City of Portsmouth,* No. 1: 14CV5L2, 2015 WL 5822659, at *5 (S.D. Ohio Oct. 1, 2015). The same analysis applies here.

To argue in its motion that Landon's Fourth Amendment claim lacks merit, Flint begins by repeating verbatim the arguments it made in opposition to the motion for preliminary injunction. [*Compare* ECF No. 43, PageID 768-70, *with* ECF No. 21, PageID 335-37]. Flint repeats its claim that it satisfied *Patel* because "this very case serves as an example of precompliance review." [ECF No. 43, PageID 700]. But in its R&R, this Court called that argument "absurd on its face," reasoning:

> The federal lawsuit that made its way to the Supreme Court in *Patel* was not identified as the type of precompliance review contemplated by that Court, and finding so would make no sense. *Patel* described the precompliance review it contemplated as being less onerous than an 'impracticable' warrant process; filing a federal lawsuit to challenge the constitutionality of an administrative search cannot be described as less onerous than a warrant process.

[ECF No. 37, PageID 602]. Flint's objections did not challenge this finding, and Judge Parker adopted the R&R. [ECF Nos. 41, 53]. The determination that Flint's inspection scheme did not afford property owners an opportunity for precompliance review before requiring an inspection is

8

the law of the case, and should not be revisited, as Flint has offered no extraordinary circumstances for doing so. *Hayden v. Rhode Island*, 13 F. App'x 301, 302 (6th Cir. 2001) (law of the case dictates that an issue decided should not be reopened absent extraordinary circumstances).

Because Flint's initial inspection code policies required inspections without affording property owners an opportunity for precompliance review, it should be declared violative of the Fourth Amendment; this portion of Landon's motion for partial summary judgment should be granted.

**B.**

In its motion for summary judgment, Flint argues that Landon's claims are now moot because of the amendment to the Inspection Code that includes a specific warrant provision. This argument fails for two reasons. First, Landon's prayer for relief includes a request for nominal damages and reimbursement of previously paid funds, [ECF No. 15, PageID 215-16]; his "claims remain viable to the extent that they seek nominal damages as a remedy for past wrongs." *Miller v. City of Cincinnati*, 622 F.3d 524, 533 (6th Cir. 2010).

Second, Flint does not meet the substantial burden of demonstrating mootness that was established by the Supreme Court.

> [T]he standard we have announced for determining whether a
> case has been mooted by the defendant's voluntary conduct is

> stringent: 'A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.' *United States v. Concentrated Phosphate Export Assn.*, 393 U.S. 199, 203, 89 S.Ct. 361, 21 L.Ed.2d 344 (1968). The 'heavy burden of persua[ding]' the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness. *Ibid*.

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000).

Here, it is not absolutely clear that the amendment to Section 902.5(b) requires enforcing agents to obtain a warrant before requiring a property owner to submit to an inspection. Flint asserts in its objections to the R&R pertaining to its motion to dissolve the preliminary injunction that, "[u]nder Section 902.5(b), in the absence of consent, an inspection can only be required after an administrative search warrant has been *issued*." [ECF No. 60, PageID 1179 (emphasis added)]. But that is not what Section 902.5(b) says; it states that the enforcing agency "shall *seek*" an administrative search warrant if permission is denied, not that the warrant must be issued. [ECF No. 41-5, PageID 744 (emphasis added)]. And under Section 902.5(c), the enforcing agency is the *only* entity empowered to determine when an inspection is "required." [*Id.,* PageID 745]. Once the enforcing agency provides notification that an inspection is "required," the landlord or owner "must" provide access to the rental property; there is no

provision allowing the landlord to deny permission or request precompliance review. [*Id.,* PageID 745]. The plain language of Section 902.5(c) is thus directly contrary to the holdings of *Camara* and *Patel* that the owner must be afforded an opportunity to have a neutral decisionmaker review the demand for an inspection. *Camara,* 387 U.S. at 532; *Patel*, 135 S.Ct. at 2454.

Flint argued in its objections that Section 902.5(b) and (c) should be read in harmony under the rules of statutory construction. *See World Book, Inc. v. Dep't of Treasury*, 459 Mich. 403, 416 (1999) ("Conflicting provisions of a statute must be read together to produce an harmonious whole and to reconcile any inconsistencies wherever possible."). But neither of those subsections, individually or read together, indicates that a warrant must be issued before a landlord or property owner is required to submit to an inspection. And the need to resort to the rules of statutory construction highlights the fact that the language of the code does not provide with absolute clarity that its enforcing agents may not require non-emergent, involuntary inspections without providing an opportunity for precompliance review.

Thus, Landon's Fourth Amendment claim is not moot.

## C.

At the same time, Landon should not be granted summary judgment on his claim that Flint violated his Fourth Amendment rights. For each alleged unlawful inspection, he has the burden "to affirmatively prove by a preponderance of the evidence his reasonable expectation of privacy in the structure which was entered" by the enforcing agents without a warrant. *Jones v. Lewis*, 874 F.2d 1125, 1134 (6th Cir. 1989). In an effort to sustain his burden, Landon attaches several exhibits to his motion for partial summary judgment, including an email communication from August 2016 in which an enforcing agent commanded Landon to provide access to a property occupied by a tenant, but the exhibit does not establish that the inspection ever occurred or that Landon had a reasonable expectation of privacy in the property. [ECF No. 55, PageID 1011]. He attaches a December 2016 email from a third party informing Landon that she was told by someone from Flint that she could not refuse an inspection, but that she was later informed that officials would be seeking a warrant. [*Id.*, PageID 1012]. This exhibit does not demonstrate that Landon had a reasonable expectation in the property at issue, and suggests that Flint sought a warrant before insisting on an inspection.

Landon attaches Flint's answer to an interrogatory stating that

Landon had paid $12,000 in fees since 2013, but the answer does not describe the reasons for those fees. [*Id.*, PageID 1013]. Another interrogatory answer states that Flint never obtained a warrant to inspect Landon's properties, but that answer does not indicate that a property was ever entered without Landon's consent. [*Id.*, PageID 1014]. Finally, Landon attaches his affidavit alleging that he has been subjected to Flint's inspection program since at least 2013, that he challenged the constitutionality of Flint's ordinances, and that he demanded warrants to enter his homes but that Flint refused to obtain them. [*Id.*, PageID 1015]. The general allegations in his affidavit do not establish that Landon had a legitimate expectation of privacy in the houses that were inspected; he had no such reasonable expectation of privacy in properties that he had leased, and thus no standing. *Shamaeizadeh v. Cunigan*, 338 F.3d 535, 545 (6th Cir. 2003). And Chief Building Official Jesse Buchanan alleged by affidavit, "If permission is denied, then the inspector makes a note of the denial and does not perform the inspection." [ECF No. 43-2, PageID 877]. Thus, a genuine dispute remains regarding whether Landon's Fourth Amendment rights were violated.

**D.**

Flint and Landon both seek summary judgment of Landon's claim

under the unconstitutional conditions doctrine. This doctrine has been applied in a variety of contexts and provides that "the government may not deny a benefit to a person because he exercises a constitutional right." *Koontz v. St. Johns River Water Mgmt. Dist.*, 133 S. Ct. 2586, 2594 (2013) (citation and internal quotation marks omitted). The overarching principle is that the government cannot coerce people into giving up the Constitutions enumerated rights. *Id.* Thus, for example, a professor could not be penalized for exercising his free speech rights with the nonrenewal of his teaching contract. *Perry v. Sindermann*, 408 U.S. 593 (1972). "For if the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited." *Id.* at 597.

Landon claims that Flint has coerced him into giving up his Fourth Amendment right against unreasonable searches and his Fifth Amendment right to due process, but both Landon's and Flint's analyses center on the Fourth Amendment. According to Landon, he has been coerced to submit to unconstitutional inspections because Flint denies water service to houses that have not been inspected and he has been fined $450 for houses that were not inspected on time. [ECF No. 55, PageID 1015].

Flint asserts that the determination of whether a claim under the

14

unconstitutional conditions doctrine survives depends on a four factor test, [ECF No. 43, PageID 772], but case law does not bear that out. No such test was relied upon in *Perry*; the issue was framed only on whether the government could deny a benefit to a person because he had exercised a constitutional right. And in a recent opinion with claims similar to those here, a court held, "[T]o the extent the Program requires Lea Family to consent to unreasonable inspections of its unoccupied units in order to rent those units, the Program likely violates the unconstitutional conditions doctrine." *Lea Family P'ship Ltd. v. City of Temple Terrace, Florida*, No. 8:16-CV-3463-T-30AAS, 2017 WL 1165583, at *10 (M.D. Fla. Mar. 29, 2017). The same analysis applies here.

But Landon's allegations are insufficient for summary judgment to be entered in his favor, as he has not established whether he had standing with respect to the houses in which water was turned off; he has not indicated whether or not those houses were leased. *Shamaeizadeh,* 338 F.3d at 545. Nor has he shown that any late fees resulted from the lack of a precomplaince review process. Genuine issues of material fact remain, and both motions for summary judgment should be denied with respect to the unconstitutional conditions claim.

**E.**

Flint seeks summary judgment of Landon's equal protection claim. "To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (citations and internal quotation marks omitted). A disparate classification does not run afoul of the equal protection clause if there is a rational basis for the disparity. *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 367. (2001). Landon claims that there is no rational basis for treating property owned by landlords differently than that owned by non-landlords, and that Flint is only concerned with gauging landlords. In response to this challenge, Flint need not articulate its reasoning for the disparate classification[1]; rather, Landon bears the burden of showing that there are no "reasonably conceivable state of facts that could provide a rational basis for the classification." *Id.* (citations and internal quotation marks omitted).

---

[1] Chief Building Official Jesse Buchanan does state that the "purpose of the inspection program is to provide safe and sanitary homes to tenants throughout the City of Flint." [ECF No. 43-2, PageID 876]. But Flint does not point to any published evidence of legislative intent.

He cannot meet his burden, as courts have recognized that cities have a rational basis for treating rental properties differently than those that are owner-occupied.

In *Chicago Bd. of Realtors, Inc. v. City of Chicago*, 819 F.2d 732 (7th Cir. 1987), the court held that an ordinance penalizing landlords for failing to maintain dwelling units in compliance with the municipal code did not violate the equal protection clause by exempting small buildings that were owner-occupied. The court reasoned that there were several plausible reasons for such a classification, including that "owners living in the building may be more responsive to tenants, more attentive to building conditions and may provide services more quickly," and "that classifications such as the one before us are quite common in laws relating to housing." *Id.* at 740.

Likewise, in *Berry v. City of Little Rock*, 904 F. Supp. 940, 949 (E.D. Ark. 1995), the court found that "[t]he fact that rental properties were targeted as opposed to owner occupied properties is not, in itself, a cause for complaint." It determined that the ordinances at issue "were designed to serve the legitimate purpose of ensuring that rental housing was being maintained in Code compliance in order to protect the health, safety and welfare of the tenants," and even if similar concerns may exist with respect

17

to owner-occupied properties, there is "'no requirement of the equal protection that all evils of the same genus be eradicated or none at all.'" *Id.* (quoting *Railway Express Agency, Inc. v. New York*, 336 U.S. 106, 110 (1949)).

For these reasons, Landon's equal protection claim is without merit.

### F.

Landon claims that Flint was unjustly enriched by collecting fees in connection with its unconstitutional inspections program. "In order to sustain the claim of unjust enrichment, plaintiff must establish (1) the receipt of a benefit by defendant from plaintiff, and (2) an inequity resulting to plaintiff because of the retention of the benefit by defendant." *Belle Isle Grill Corp. v. City of Detroit*, 256 Mich. App. 463, 478 (2003). Flint moves for summary judgment of Landon's unjust enrichment claim, but its underdeveloped argument rests on its assertion that the Inspection Code is valid, and that there could thus be no inequity. This argument should be deemed waived. "It is well-established that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argument, are deemed waived." *Dillery v. City of Sandusky*, 398 F.3d 562, 569 (6th Cir. 2005) (internal quotation marks and citations omitted); *see also Bishop v. Gosiger, Inc.*, 692 F.Supp.2d 762, 774 (E.D. Mich. 2010) ("It

is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to put flesh on its bones." (internal quotation marks and citations omitted)).

## IV. Conclusion

For the foregoing reasons, the Court recommends that Flint's motion for summary judgment **[ECF No. 43]** be **GRANTED IN PART AND DENIED IN PART**, and that Landon's motion for partial summary judgment **[ECF No. 55]** be **GRANTED IN PART AND DENIED IN PART**. Specifically, Flint should be granted summary judgment of Landon's equal protection claim, but its motion should otherwise be denied; and Landon's request for a declaration that the version of Flint's inspection code that was in place at the time of the filing of the lawsuit violated the Fourth Amendment should be granted, but his motion for partial summary judgment otherwise be denied.

s/Elizabeth A. Stafford  
ELIZABETH A. STAFFORD  
United States Magistrate Judge

Dated: April 21, 2017

### **NOTICE TO THE PARTIES REGARDING OBJECTIONS**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service

of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.